JOHN FRANCIS, *State Treas.*, v. A. T. & S. F. RAILROAD
COMPANY.

1. TAXING RAILROAD PROPERTY, *in Unorganized Counties; Constitutional Law.* Sec. 37 of the tax law of 1876, which provides for the collection of state taxes on railroad property in the unorganized counties of the state, is constitutional and valid.

2. ———— Section 1 of article 11 of the constitution of this state, relating to the subject of assessment and taxation, contrasted with the provisions on that subject found in the constitutions of other states, and explained and construed.

### *Error from Shawnee District Court.*

INJUNCTION, brought by the *A. T. & S. F. Railroad Company*, plaintiff, against *John Francis*, as treasurer of state, defendant. The plaintiff's petition shows that plaintiff has been and is the owner of certain railroad property located outside the limits of any of the organized counties, and situate and located within the limits of the unorganized counties of Foote, Sequoyah, Hamilton and Kearney, within the state of Kansas; that said railroad property consists of 106 miles and 1,370 feet of right-of-way, railroad track, and the stations, water tanks and telegraph lines connected therewith, and that said property so located therein is of the actual value of $400,000; that said property is part of a continuous line of railroad which has been for more than one year last past and is now owned by said plaintiff, extending from and running through the organized counties of Atchison, Jefferson, Shawnee, Osage, Lyon, Chase, Marion, Harvey, Reno, Rice, Barton, Pawnee, Edwards, and Ford, and through the said unorganized counties of Foote, Sequoyah, Hamilton, and Kearney, to the west line of the said state; that the board of railroad assessors valued and assessed for the purposes of taxation for the year 1876, said railroad property of plaintiff in the state of Kansas, at the following sum per mile for each and every mile of said railway operated by it in the state of Kansas, to-wit: Right-of-way, track, etc., $7,350; rolling-

stock, $651.30; other property, $47.22; total, $8,048.52 per mile; that the valuations set by said board of railroad assessors were returned by the auditor of state to the county clerk of each and every county in which any portion of its said railroad property was then located; that the plaintiff, in proper and apt time, paid the full amount of one-half of all the taxes assessed and levied against its said railroad property, in each and every organized county of the state wherein the same was located and taxable for the year 1876; that none of the railroad property of the plaintiff was ever equalized by any county board of equalization, or by the state board of equalization, for the year of 1876, the said boards and each of them refusing to do so; that there is now, and has been for more than two years last past, a large amount of other personal property belonging to other persons than said plaintiff, situated and located in the said unorganized counties of Foote, Sequoyah, Hamilton and Kearney, and amounting in the aggregate to the sum of $750,000; that the auditor of state, under the provisions of sec. 37 of an act entitled "an act to provide for the assessment and collection of taxes," approved March 4th 1876, has made a levy of tax for state purposes for the year of 1876 in said unorganized counties of Foote, Sequoyah, Hamilton and Kearney, on the said railroad property of plaintiff, amounting in the aggregate to the sum of $4,750.40; that said auditor of state has placed said levy of said tax in the hands of the said defendant, *John Francis,* as state treasurer, for collection, and said defendant threatens to and will issue a warrant under his hand directed to the sheriff of the county of Shawnee, and commanding said sheriff to levy the whole amount of said taxes and collect the same, with the additional per cent. thereon, together with his fees for collecting the same, of the personal property of said plaintiff, unless the said defendant be restrained by the order of this honorable court from so doing. The petition further stated and charged, that no amount of state taxes for the year 1876 was apportioned by the state board of equalization to the said unorganized coun-

ties of Foote, Sequoyah, Hamilton and Kearney, or to any of them, for payment; that no equalization whatever of the total taxable property in said unorganized counties, or in any of them, was made by said state board of equalization for the said year; that no property whatever was returned to said state board of equalization for said year from said unorganized counties, or any of them, to be equalized; that the amount of state taxes levied in said unorganized counties was not apportioned according to the valuation of the taxable property therein for the year of 1876; that the total amount of state taxes levied in said unorganized counties is the said sum of $4,750.40, levied upon the property of the plaintiff as aforesaid, and that plaintiff and its said property is made to bear the whole burden of taxation in said unorganized counties, and that all the other property situate and located therein, and amounting to the said sum of $750,000, has been permitted to and does entirely escape taxation, and that the said tax levied on its said property in said unorganized counties is greater and a larger rate per cent. than is levied on the property of other person or persons situated in said unorganized counties. Judgment was demanded, that the defendant be enjoined from collecting or attempting to collect said tax or any part thereof levied on the said property of plaintiff in the unorganized counties of Foote, Sequoyah, Hamilton and Kearney, or from issuing a tax warrant for the collection of the same, etc. The defendant demurred, "for that it appears upon the face of said petition that such petition does not state facts sufficient to constitute a cause of action." The district court, at December Term 1877, overruled the demurrer; and *Francis*, state treasurer, appeals, and brings the case here.

*Willard Davis*, Attorney-General, for plaintiff in error.

*Ross Burns*, and *J. G. Waters*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This case turns upon the constitutionality of section 37 of the tax law of 1876, (Laws of 1876, p. 67.) That section reads as follows:

"SEC. 37. If any of the railroad property in this state is located outside the limits of organized counties, it shall be the duty of the auditor of state to make a levy of tax upon such property for state purposes, the same as is made upon the other taxable property, and place the same in the hands of the treasurer of state for collection; and if such taxes be not paid into the state treasury on or before the first day of January after such taxes have been levied, then the state treasurer shall issue a warrant under his hand, directed to any sheriff in the state, commanding him to levy the amount of such unpaid taxes, with the additional per cent. thereon, together with his fees for collecting the same, of the personal property of said railroad corporation or company against which such taxes are assessed, and pay the same to the state treasurer; and to return such warrant within sixty days [from the date] thereof."

Its constitutionality is challenged under section 17 of art. 2, and section 1 of art. 11. These provisions of the constitution are as follows:

"SEC. 17. All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted."

"SEC. 1. The legislature shall provide for a uniform and equal rate of assessment and taxation; but all property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent, and charitable purposes, and personal property to the amount of at least two hundred dollars for each family, shall be exempt from taxation."

Under decisions already made by this court it does not seem to us that any serious question arises upon the first section quoted. *The State v. Hitchcock,* 1 Kas. 178; *Beach v. Leahy,* 11 Kas. 22, 26. Under the other section it is insisted that a tax to be valid must be upon all the property in the taxing district, and that in these unorganized counties no property is taxed but that of railroads; that the section is

unfair and partial legislation, and upon its face an intended discrimination against railroads; that there is an intentional omission of property from taxation, and that this vitiates the tax upon railroads; and that no equalization is provided for as to this property, and that therefore the rate becomes unequal. Upon this question elaborate arguments have been made by the several counsel, and many authorities cited from the decisions of other states. The inapplicability of many of these authorities will be apparent further along, when we come to compare the provisions of our own and other constitutions. By existing statutes, and indeed by all legislation since the admission of the state, the machinery for all ordinary assessments and taxation has been in the county organization. Of course then, in *unorganized counties* the machinery is wanting, and all property therein escapes taxation. At least that is true of all real property, and all personal property whose *situs* is not changed by the domicile of the owner. Since 1869, however, the assessment and taxation of railroad property has been accomplished, not through county organization, but by independent state machinery. This difference between the two methods of assessment and taxation has been before this court, and its constitutionality affirmed. *Gulf Railroad Co. v. Morris*, 7 Kas. 210. In other words, the constitutional requirement of an equal and uniform *rate* of assessment, does not compel the use of but a single mode or method of assessment. Different kinds of property may be assessed in different modes, and by different officers, provided only that the *rate* at which these different officers are required to make their assessments is uniform, and the same for all.

The freedom from taxation of property other than railroad property in the unorganized counties under the act of 1876, arises in the same manner as the freedom of all property in such counties under prior statutes, and that is, through the failure to provide machinery for reaching it. The question therefore is, whether the failure to provide machinery for collecting taxes on all the property in the unorganized counties

renders unconstitutional the means employed to collect taxes on a portion of said property, and invalidates the tax attempted to be collected by such means. The question is a difficult one. A negative answer seems to conflict with the general idea of uniformity, which common justice as well as the general understanding of both legislatures and courts places as the foundation of all valid taxation. But an affirmative answer if carried to its logical results produces an effect so startling, and so fatal to all taxation from the commencement of our state history, as to compel the clearest conviction of its truth before it can be given. It is a general proposition to which all will yield a ready assent, that taxation must be equal and uniform; but that this general proposition has some limitations. See the opinion in the case of *Comm'rs of Ottawa County v. Nelson,* recently filed; (*ante,* 234.) Notice a moment to what results an arbitrary, strict, and technical enforcement of this rule will lead. There never has been a time since the admission of the state when there were not within its limits unorganized counties; never a time when there was not property, real and personal, in such counties; and never a time, prior to this act of 1876, when such property (at least the real property) was made, through the taxing machinery, to contribute to the support of the state government. In other words, the state has never provided the machinery for taxing all the property subject to taxation within the limits of the taxing district, that is, the district to be protected by and to receive the benefit of the tax. Has this failure invalidated the state tax all these years, all the proceedings for the collection of taxes, and all the titles founded upon such tax proceedings? But it may be said that this result can be obviated by holding that for state taxes the taxing district is only the organized counties. But by what authority can the legislature divide the state into two districts and say that one of such districts shall assume the entire burden of the state government? Could it enact that for the county of Shawnee the taxing district should be the city of Topeka, and the entire burden of supporting the county government

cast upon this small territorial portion of the county? Is the extent of the taxing district a matter of mere arbitrary enactment? Clearly not; for if so, all restriction would be lost, and the idea of uniformity in taxation would be but the baseless fabric of a dream. It is said by Cooley in his work on Const. Lim., p. 504, "that the legislature have no power to arrange the taxing districts arbitrarily, and without reference to the great fundamental principle of taxation; that the burden must be borne by those upon whom it justly rests." But conceding for the argument, that the legislature has power arbitrarily to limit the extent of the taxing district, and that by implication it has limited the state taxing district to the organized counties—that this in nowise conflicts with the constitutional restrictions, and that upon this the state taxes hitherto levied can be sustained, and what then? Does it not follow, that there is a large portion of territory outside the state taxing district, and yet within the jurisdiction of the state, and under the control of the legislature? May not the legislature prescribe the conditions upon which state protection will be afforded to property in that territory? And what section of the constitution limits the extent and character of such conditions? Briefly, it may be stated, that the unorganized counties are necessarily a part of the state taxing district, or they may be excluded by legislative action; if the former, then, if the claim of the counsel is correct, that a failure to provide for taxing all the property in the taxing district is fatal to the tax, there has been hitherto no valid state tax; if the latter, then the property in those counties is outside the taxing district, yet subject to taxation; and where is the constitutional restriction on the power of the legislature?

It is doubtless true, that results do not change rules, and that consequences may not be invoked to overthrow established principles, and that courts may not disregard plain constitutional requirements to save from the injurious effects of illegal legislative action; but surely, the fact that during these sixteen years of state taxation, the validity of no state

tax has ever been challenged on the ground that the machinery for assessment and taxation plainly leaves unreached for taxation a portion of the property within the state, the taxing district, is evidence of no little value, that, by the common judgment of all, the constitutional provision above quoted does not require such construction. But if it be not unconstitutional to relieve all property in the unorganized counties from state taxation, is it any more unconstitutional to relieve only a part of such property? Does the law become more unconstitutional the nearer it approaches to a full compliance with the strict letter of the constitution? Again, it must be noticed that the maintenance of a county organization is attended with expense; that the non-organization is due to the lack of population; and, by implication, of property sufficient to justify, in the judgment of the legislature, the carrying of such a burden. It may well be presumed, that in these outlying portions of the state the expense of the machinery for collection would exceed the amount of taxes collected. Now in order to secure valid state taxation in the inhabited portions, must the state, at an expense exceeding the proceeds, extend its tax machinery out among the few settlers scattered over the plains in our western frontier? That would simply add to the burden of the settled portion of the state, and be but a sacrifice of the substance for the shadow. It must be borne in mind, that the constitution was designed as a permanent instrument; that it contemplated a state, all whose territory was inhabited; and without descending into minute details, or covering every possible contingency, sought to prescribe general and enduring rules. It is no sliding-scale with varying provisions for vacant plains and inhabited localities. A constitution is for citizens, not for prairies; for a community, and not for a desert. In the very nature of things large discretion must be left to the legislature as to what provisions should be made for, and what obligations cast upon, those who push out beyond the limits of organized counties and commence the work of reclaiming the desert. Not that the constitution is without

force, and the legislature supreme in unorganized counties, but that a constitutional provision which evidently rests upon the assumption of a full, civil, and political organization of community is not to be extended into a region destitute of such organization.

And again: "It is settled here as elsewhere, that taxation by license does not conflict with the constitutional requirement of uniformity, although in the nature of things it is a burden upon but a portion of the community. (*Fretwell v. City of Troy*, 18 Kas. 271.) The tax before us is not in form a license-tax, but in substance and practical effect is very like it. It is a tax upon property in one employment, and a tax graduated to the amount of such property belonging respectively to the various parties engaged in such employment. The result would be the same, both to the state and the railroad, if the legislature had enacted that railroads should in lieu of all state taxes pay a license-tax of so much per mile. We would not be understood however as asserting that a mere similarity of results changes an ordinary tax on property into a license-tax, or that there is no essential distinction between the two, or that the tax before us is not a property-tax. We have noticed the similarity between this and a license-tax, and the settled validity of the latter, to indicate the limitations on a strict and technical construction of the constitutional provision, and how those limitations in principle touch the case before us. It bears upon the objection that this is partial and oppressive legislation and therefore void. Every license-tax upon any calling or profession is in one sense partial and oppressive; it is not a burden cast upon the whole community alike, but only upon one class; yet the power of the legislature in this respect is conceded, and when this burden is cast upon corporations who receive from the state special privileges, the justice of the tax is often as clear as the legality is undoubted.

Still again: It seems to be assumed by counsel, that the legislature cannot legally exempt any property from taxation other than that expressly named in the constitution. Is this

true? There is in terms no prohibition on such exemption; and as to personal property, the language of the constitution seems to imply the existence of a power to exempt. It says, "all property used, * * * and personal property to the amount of *at least* two hundred dollars for each family, shall be exempted from taxation." In other words, the amount of personal property to be exempted is not fixed. It must be at least two hundred dollars for each family, and it may be as much more as the legislature shall determine. It may be well at this time to notice the language of the constitutions of some of the other states from whose decisions counsel have made quotations. In Ohio the language is:

"Laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise, and also all real and personal property, according to its true value in money; but burying grounds, * * * and personal property to an amount not exceeding in value two hundred dollars for each individual, *may* by general laws be exempted from taxation."—(Const. 1850, art. 12, § 2.)

In this will be seen express direction to tax all property, and exemptions are permissive only, and limited. So also in Indiana, where the language is—

"The general assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal."—(Const. 1851, art. 10, § 1.)

The first clause of this section, it will be seen, is like the first clause of the section quoted from our own constitution, but is followed by language requiring a valuation of *all* property. The constitution of Florida is similar, (Const. 1868, art. 12, § 1,) as well as that of Nevada, (Const. 1864, art. 10, § 1,) as well as Oregon, (Const. 1857, art. 9, § 1,) and that of South Carolina, (Const. 1868, art. 9, § 1.) In Arkankansas the constitution provides, that—

"Laws shall be passed taxing by a uniform rule all money, credits, investments in bonds, joint-stock companies, or otherwise, and also all real and personal property according to its true value in money."—(Const. 1868, art. 10, § 2.)

The constitution of California provides, art. 11, § 13:

"Taxation shall be equal and uniform throughout the state. All property in this state shall be taxed in proportion to its value, to be ascertained as directed by law."

In Illinois:

"The general assembly shall provide such revenue as may be needful, levying a tax by valuation so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property."—(Const. 1870, art. 9, § 7.)

In Louisiana:

"Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law."—(Const. 1868, art. 118.)

In Minnesota:

"Laws shall be passed taxing all moneys, * * * and also all real and personal property according to its true value in money; but public burying grounds, * * * and personal property to an amount not exceeding in value two hundred dollars for each individual, shall by general laws be exempt from taxation."—(Const. 1857, art. 9, § 3.)

In Mississippi:

"Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law."—(Const. 1868, art. 12, § 20.)

In Missouri:

"No property, real or personal, shall be exempt from taxation, except such as may be used exclusively for public schools, and such as may belong to the United States and to this state, to counties, or to municipal corporations in this state."—(Const. 1865, art. 11, § 16.)

The constitution of North Carolina is similar to that of Arkansas. (Const. 1868, art. 5, § 3.) In Tennessee it is this:

"All property, real, personal, and mixed, shall be taxed; but the legislature may except such as may be held by the state, by counties, * * * and shall except one thousand dollars worth of personal property in the hands of each tax-payer. * * * All property shall be taxed according to its value, * * * so that taxes shall be equal and uniform throughout the state."—(Const. 1870, art. 2, § 28.)

In Virginia:

"Taxation, except as hereinafter provided, * * * shall be equal and uniform; and all property, both real and personal, shall be taxed in proportion to its value."—(Const. 1870, art. 10, § 1.)

The constitution of West Virginia is similar to that of Virginia in this respect. (Const. 1861, art. 8, § 1.)

In all these provisions will be noticed either an express direction to tax *all* property, or an express prohibition on exempting any other than certain specified property. Our constitution contains neither. Does it mean the same, without, as those do, with? The positive language of these several sections, sustains if it does not compel the positive assertions of the various decisions cited by counsel. Those decisions rest upon the clear commands and prohibitions of the constitution upon which they were based, and are therefore only of limited and qualified application here. We do not wish to be understood as intimating that there is no restriction on legislative action in the matter of taxation. Underlying all valid taxation rests the principle of uniformity, a principle whose existence is implied if not in positive and express terms enjoined by the provisions of our constitution. But in practical operation, a general rule or principle is often limited by some other general rule or principle, or by the facts and conditions under which its application is invoked. And sometimes it happens that a general rule is given its truest and most thorough enforcement by an apparent disregard in minor and temporary matters of its mandates. Thus it may be that uniformity in the burden of taxation, will be secured in the truest and best sense by not attempting to extend the machinery of taxation into the unorganized counties where the expense of the machinery may exceed the proceeds of the tax; and this being so, the principle of uniformity is in no just sense overthrown or disregarded by leaving the property in those counties untaxed. In a limited sense it may be said, that there is a disregard of the obligations of uniformity because there is no attempt to reach all

property; but in a higher and better sense, it is clear that there is secured an equality and uniformity in the burden of taxation. The spirit is present, though the letter may be wanting.

Again: If two methods of assessment may be pursued, one for ordinary property, cumbersome and expensive, the other for a particular class of property, simple and inexpensive, must the two modes be extended equally throughout the state in order to secure a true uniformity? May not that uniformity require that all property throughout the state that can be reached for taxation at a cost less than the proceeds of the tax should be so reached? and in the settlement of the unorganized counties, may not the time come when the one kind of property may be so reached by the special method of assessment, while general property could not be. so reached by the ordinary method? Would not the obligations of uniformity then not only justify but even virtually compel the taxation of that particular class of property?

A final objection is, that the assessment never comes for review before any board of equalization. There being no county organization, no county or other local taxes, the lack of a county board of equalization is wholly immaterial. So far as the other board of equalization is concerned, its function is to equalize the assessments returned from the several counties. Such a tribunal doubtless subserves a wise purpose in that it prevents any county from shirking its just proportion of the burdens of the state government by grossly inadequate assessments. But such a tribunal is not inherently essential to valid taxation. Its existence is not enjoined by any section of the constitution. It is the mere creature of legislative action; and if wholly abolished its decease would work no hindrance to legal taxation. It would mean simply, that the legislature was content to accept the assessment by the local officers as final for purposes of state as well as local taxation. (*McMullan v. Anderson*, U. S. Sup. Ct., 16 Albany Law J., p. 335.) But as to railroad property, there is no original assessment by local officers.

It is made primarily by a state board. The inequalities of local assessments as to ordinary property, sought to be corrected by a state board of equalization, are avoided by the single assessment for the state of all railroad property by a state board of assessors. We forbear any inquiry as to those questions, about which counsel for defendant in error seem to disagree, as to the power of the county board of equalization over the assessments of railroad property, and the effect of a change of the valuation of any county by the state board upon such assessment. Such inquiry does not seem essential to a determination of questions involved herein. We hold, and that is all that is necessary for this case, that where the rate of taxation is fixed by legislative enactment, where the assessment of all of a particular kind of property throughout the state, such as railroad property, is made by a single state board of assessors, and where a part of such property is in the unorganized counties in which is no machinery for or attempt to collect local taxes, and therefore no county board of equalization, that a failure to provide for a reëxamination of assessments of such property in such unorganized counties, or an equalization thereof by a state board of equalization, does not render the tax void.

We shall not prolong this opinion further. The case has been before us for several months, and the subject of repeated consultations, and frequent examinations. The conclusions which we have reached are by no means entirely satisfactory to us. We hold the section to be constitutional and valid, not because it is clear to us that it is so, but because it is not clear to us that it is not. And the benefit of the doubt must be given to the law. The question would be different if discrimination was attempted between property in organized counties, or if the constitution did not contain but a single provision which seems to imply and rest upon the assumption of organized communities.

The judgment of the district court must be reversed, and the case remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.