609 P.2d 1129

**XEROX CORPORATION, Appellant, Respondent, Cross-Appellant,**

v.

**ADA COUNTY ASSESSOR, Respondent, Appellant, Cross-Respondent.**

No. 12914.

Supreme Court of Idaho.

April 9, 1980.

Jim C. Harris, Ada County Pros. Atty., Scott L. Campbell, Deputy Pros. Atty., Boise, for respondent, appellant, cross-respondent.

Larry Ripley of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for appellant, respondent, cross-appellant.

BAKES, Justice.

Xerox Corporation, appellant, respondent and cross-appellant, and the Ada County assessor, respondent, appellant and cross-respondent, contend that the district court erred in its disposition of a dispute over the county's 1973 levy of personal property ad valorem taxes on business machines owned by Xerox and either leased to Xerox's customers in Ada County or held by Xerox in Ada County for lease or sale to its customers. We affirm in part and reverse in part.

The case was tried to the district court sitting without a jury on a statement of facts submitted by stipulation of the parties. Xerox maintains an office in Boise, Idaho, from which it solicits customers for lease and sale of Xerox business machines and directs a service program for the machines. Although Xerox offers its machines for either sale or lease, only 0.3% of its customers chose to purchase machines in 1973. In compliance with the Idaho Sales Tax Act, Xerox collects and remits to the State of Idaho a use tax on proceeds derived from rental of the machines.

In 1973 Xerox submitted an initial personal property ad valorem tax declaration in which it reported the value on January 1, 1973, of the machines Xerox held in Ada County for sale or lease and the value of machines Xerox owned in Ada County which were then leased to its customers.

Xerox also submitted at the end of each of the first three quarters of 1973 three supplemental declarations requested by the Ada County assessor in which Xerox reported the value of its machines in Ada County which were, at the time of the supplemental declaration, held for sale or lease or which had been leased by Xerox to its Ada County customers.[1] Ada County assessed personal property ad valorem taxes against Xerox based upon the initial and supplemental declarations pursuant to the schedule contained in I.C. §§ 63–102 and –105S.[2] However, although Xerox's ad valorem tax liability was increased as a result of business machines which Xerox acquired subsequent to the beginning of the year, Xerox's tax liability was not decreased to reflect the fact that certain machines reported by Xerox in the initial declaration or in a subsequent declaration were removed from the county during the course of the year.

On the basis of the initial and supplemental declarations Xerox was assessed $15,494.44 in personal property ad valorem taxes for the 1973 tax year. Xerox paid its tax liability under protest in January, 1974. Xerox's petitions for relief were denied by the Ada County Board of Equalization and the Idaho Board of Tax Appeals. Xerox filed timely appeal to district court where a trial *de novo* was held pursuant to I.C. § 63–3812(c).

Following a court trial the district court in a memorandum decision held that Xerox's machines, while leased out to its customers, were not "business inventory" exempt from personal property ad valorem taxation under I.C. § 63–105Y,[3] but that those machines held by Xerox in its offices or warehouses for sale or lease were "business inventory" exempt from ad valorem taxation. The court held that the assessor's decision to impose an ad valorem property tax pursuant to the supplemental declarations on non-exempt property entering the county after the beginning of the tax year without entitling the taxpayer to a reduction in liability to reflect removal of non-exempt property from the county during the tax year was improper and ordered the county to afford Xerox proper credit for any taxes levied on equipment which had been removed from the county. The court upheld the assessor's decision to require supplemental declarations only of those tax-

1. I.C. § 63–1203 authorizes assessment, by an initial declaration and by subsequent supplemental assessments, of non-exempt personal property:

"63–1203. *Assessment of personal property.*—The assessor shall assess all personal property required by this act to be entered on the personal property assessment roll, between the first day of January and the first Monday of July each year, and shall complete the assessment on or before the first Monday in July and file the roll with the clerk of the board of county commissioners. He shall assess and enter on a subsequent roll to be by him verified in the manner provided for the verification of the personal property assessment roll, all personal property which comes into the county, between the first Monday of July and the third Monday of November of each year which has not been assessed, and all personal property which has during the year escaped assessment, and shall immediately deliver the subsequent roll to the board of commissioners which shall then meet as a board of equalization as provided in section 63–1904, Idaho Code. . . ."

2. I.C. §§ 63–102 and –105S address the ad valorem taxation of non-exempt property which comes into the state after January 1 of the tax year or which changes from exempt status to non-exempt status after January 1. The two statutes provide for an apportioned ad valorem tax assessment on the following basis: if the property becomes taxable before April first, it shall be assessed for its full assessed value; if on the first day of April and before the first day of July for three-fourths of its full assessed value; if on the first day of July and before the first day of October, then for one-half its full assessed value; and if during the remainder of the taxing year, for one-fourth its full assessed value.

3. "63–105Y. *Business inventory exempt from taxation.*—Commencing on January 1, 1971 the following property is exempt from taxation: business inventory. For the purpose of this section, 'business inventory' means all items of tangible personal property described as:

"(1) All livestock, fur-bearing animals, fish, fowl and bees.

"(2) All nursery stock, stock-in-trade, merchandise, products, finished or partly finished goods, raw materials, supplies, containers and other personal property which is held for sale or consumption in the ordinary course of the taxpayer's manufacturing, farming, wholesale jobbing, or merchandising business."

payer's involved in businesses which the assessor's experience indicated were likely to bring substantial amounts of non-exempt property into the county during the tax year subsequent to the initial declaration. Finally, the court held that the taxable status of Xerox's machines must be determined on a monthly basis, and not on a quarterly basis as required by the county.

 Xerox Corporation argues on appeal that the district court erred in concluding that those machines owned by Xerox which were leased out to Xerox's Ada County customers were not within the business inventory exemption from personal property ad valorem taxation contained in I.C. § 63–105Y. Xerox contends that the machines, when leased out, still constitute its stock in trade and that they are still available for sale. Ada County, however, points out that I.C. § 63–105S governs taxation of property which changes from exempt to non-exempt status during the tax year and expressly provides that if the change in tax status

> "results from the leasing or rental of property normally constituting business inventory, the same shall be subject to tax only for the period it is so leased or [so] rented and upon its return to business inventory shall again be exempt as provided in section 63–105Y, Idaho Code."

I.C. §§ 63–105S and –105Y are *in para materia* and must be construed to effect a common purpose. I.C. § 63–105S evidences a clear legislative intent that property owned by a business not be exempted from ad valorem taxation as business inventory when it is leased to customers of the business. Statutory tax exemptions should be strictly construed against the taxpayer. *Richardson v. State Tax Comm'n*, 100 Idaho

·705, 604 P.2d 719 (1979). The district court properly determined that Xerox's equipment leased to its Ada County customers is not within the business inventory tax exemption contained in I.C. § 63–105Y. *Cf. Olson Equipment Co. v. City of Minneapolis,* , 285 Minn. 146, 171 N.W.2d 717 (1969) (rental equipment in lessees' possession on assessment date held not tax exempt as inventory of lessor).

 We also agree with the district court that Xerox's machines are "business inventory" within the meaning of I.C. § 63–105Y when they are not in lease status. When not leased to customers the equipment falls within the plain language of I.C. § 63–105Y since it is then stock in trade, merchandise, or personal property held for sale or consumption in the course of Xerox's business. *Cf. Aeronautical Communications Equipment, Inc. v. Metropolitan Dade County*, 219 So.2d 101 (Fla.App.1969) (stock in trade or inventory consists of chattels used in a merchant's trade or held for sale).[4]

Xerox next argues that the district court erred in sanctioning the Ada County assessor's decision to require supplemental personal property declarations to be filed only by particular taxpayers which, as indicated by the assessor's experience, were likely to acquire additional taxable personal property during the tax year. Xerox contends that the county's requirement that only certain taxpayers file supplemental declarations resulted in an unlawful, arbitrary, capricious, intentional and systematic discrimination in the county's personal property ad valorem tax policy. Xerox maintains that the county's procedure constitutes selective enforcement of the personal property supplemental assessment provisions and violates Idaho Constitution Art. 7, § 5,[5] which

---

4. Nowhere does the Idaho Code directly address the taxable status of stock-in-trade held for lease or leased out to customers of the taxpayer lessor. We have construed the ad valorem taxation statutes, to the best of our ability, to effect what appears to us to be the legislature's intent. However, the statutes addressed here, as well as below in this opinion, have been amended on a piecemeal basis numerous times. It is virtually impossible to gather a coherent ad valorem tax policy from them. As I noted in *State v. Boyenger*, 95

Idaho 396, 509 P.2d 1317 (1973), a process of piecemeal amendment of legislation "like too many layers of old wallpaper, makes the task of the artisans of the law extremely difficult." , 95 Idaho at 402, 509 P.2d at 1323.

5. "[Id. Const. Art. 7] § 5. *Taxes to be uniform* —Exemptions.—All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regu-

precludes tax discrimination within classes of property or businesses. *See Anderson's Red & White Store v. Kootenai County,* 70 Idaho 260, 215 P.2d 815 (1950).

In January, 1973, the Ada County assessor issued approximately 8,500 initial personal property tax declarations to owners of non-exempt personal property. Subsequently between 1,100 and 1,200 supplemental declarations were sent to certain taxpayers selected by the assessor. Supplemental declarations were sent to two groups of taxpayers: (1) those taxpayers which the assessor's office knew had actually acquired additional taxable personal property during the tax year; and (2) certain classes of taxpayers, *i. e.,* leasing companies, sign companies and vending machine companies, whose businesses were of a nature that, as shown by the assessor's experience, they were likely to have acquired taxable personal property during the tax year after filing of the initial declaration in January.

The district court upheld the assessor's method of selecting taxpayers required to submit supplemental declarations, noting that the county pursued to the extent its staff resources and budget permitted those taxpayers who did bring property into the county after the assessment date. The record on appeal supports the district court's conclusion that the county's method of assessing the ad valorem personal property taxes, although not ideal, does not violate the Idaho constitutional requirement that ad valorem property taxes be assessed uniformly.

■■ The constitutional rule of uniform ad valorem taxation requires that all property not exempt from taxation be assessed at a uniform percentage of actual cash value and that a single fixed rate of taxation must be applied against all taxable property. *E. g., Merris v. Ada County, Idaho,* 100 Idaho 59, 593 P.2d 394 (1979); *Idaho Telephone Co. v. Baird,* 91 Idaho 425, 423 P.2d

337 (1967). The rule requiring uniformity in ad valorem taxation is not offended by reasonable classifications of property for purposes of applying different methods of valuation of disparate types of property. "The constitutional mandate is satisfied if the methods are not obviously designed to produce discriminatory burdens upon different classes of property." *Idaho Telephone Co. v. Baird,* 91 Idaho at 431, 423 P.2d at 343. Although uniformity in imposition of the tax burden is the goal, mathematical precision is, as a practical matter, impossible to achieve. "Individual irregularities and inequality in taxation will always exist. It is a process which cannot be reduced to an exact science. The law does not require exactitude, but it does require uniformity." *Anderson's Red & White Store v. Kootenai County,* 70 Idaho 260, 265, 215 P.2d 815, 818 (1950).

In *State ex rel. Frizzell v. Dwyer,* 204 Kan. 1, 460 P.2d 507 (1969), the Kansas Supreme Court considered a challenge to the validity of a statutory ad valorem tax provision which provided for the assessment of motor vehicles purchased after January 1, but before November 1. Plaintiff contended that the procedure violated the state constitutional requirement of uniform taxation because motor vehicles purchased after January 1 were taxed for the year of purchase while other personal property was not taxed in the year of purchase. Plaintiff also noted that the statute did not provide for ad valorem taxation in the year of purchase of automobiles purchased after November 1. In upholding the statutory procedure, the court made the following comments which we find applicable to the case at bar:

> "The dominant principle of our constitutional mandate is that property shall be assessed for taxation under uniform rules so that equality in the burden of taxation results. Yet practical problems in the administration of a taxing system always

lations as shall secure a just valuation for taxation of all property, real and personal: provided, that the legislature may allow such exemptions from taxation from time to time as shall seem necessary and just, and all existing ex-

emptions provided by the laws of the territory, shall continue until changed by the legislature of the state: provided further, that duplicate taxation of property for the same purpose during the same year, is hereby prohibited."

remain; absolute or perfect equality in taxation, being impossible of attainment, is not required. As long as there is substantial uniformity in the application of tax statutes, constitutional provisions relating to equality and uniformity are not violated (see 84 C.J.S. Taxation § 22 a and b; 1 Cooley, Taxation, § 259).

"One element to be considered in determining subjection of various kinds of personal property to tax liability is the expense attendant to the listing and assessment procedure. Long ago, this factor was recognized in *Francis, Treas. v. Atchison, T. & S. F. Rld. Co.*, 19 Kan. 303, when this court rejected a contention of lack of equality and uniformity in taxation in violation of article 11, section 1, in a situation where expense of the machinery for collection of certain taxes might well have exceeded the amount of taxes collected.

"Some kind of inquisitorial process is generally required in the discovery of personal property to be listed for taxation. That this could be profitably carried on by the state beyond a certain listing date as to all kinds of personal property might well be doubted. Certainly the state is not obliged to tax property when the cost of discovery and assessment would be greater than the amount received. . .

. . . . . .

"Plaintiff also urges the act lacks the requisite uniformity and equality because vehicles purchased after November 1 would not be subject to taxation, while those purchased before that date are. That which has been heretofore said respecting the practical problems of taxation sufficiently answers this contention. A final cutoff date in our taxing system so as to give certainty and stability to the public revenues in a given year is an obvious necessity, which fact this court has recognized (*Benn v. Slaymaker*, 93 Kan. 64, 143 P. 503).

"We cannot say the act results in invidious discrimination so as to destroy the requisite uniformity and equality in our taxing system, and its validity must be upheld." 460 P.2d at 511.

In *Security Properties v. Arizona Dept. of Property Valuation*, 112 Ariz. 58, 537 P.2d 924 (1975), the Arizona Supreme Court upheld selective assessments made only of high rise buildings. The court ruled that the assessor had adequately justified the procedure as an attempt to rectify acknowledged discrepancies in individual valuations of high rise real estate located in the county. The court held that to characterize the selective assessment procedure as violative of the state constitutional requirement of uniformity of taxation, "it must be clearly shown that assessments which are unequal are the result of systematic and intentional conduct—in the sense that the inequality would thereby be deliberately created." 537 P.2d at 927. *See also, State v. Reefer King Co., Inc.*, 559 P.2d 56 (Alaska 1976); *Ernest W. Hahn, Inc. v. County Assessor for Bernalillo County*, 92 N.M. 609, 592 P.2d 965 (1978). Subsequently, the Arizona Court of Appeals, in *County of Maricopa v. North Central Development Co.*, 115 Ariz. 540, 566 P.2d 688 (App.1977), applied the rule enunciated in *Security Properties* to find that the selective assessment of partially completed building construction projects in Maricopa County was violative of the Arizona constitutional requirement that ad valorem taxes be uniformly levied. The county assessor had not attempted to value all non-exempt partially completed structures in the county for purposes of levying ad valorem taxes on the structures. The assessors had, however, valued the major construction projects in the county and levied ad valorem taxes on them. The result was that only a few prominent construction projects in the county were assessed and that, in the court's words, the "vast majority" of partial completions were omitted from the tax rolls for the year in question. "[T]he result of [the assessor's] conduct was discrimination against the more substantial partial completions . . ." 566 P.2d at 691.

We agree with the authorities cited above that an individual who claims that a selective assessment procedure has deprived him or her of the protection guaranteed by the state constitutional requirement

of uniformity of taxation must show a deliberate plan to discriminate based upon an unjustifiable or arbitrary classification. The record before the court on this appeal supports the district court's conclusion that the Ada County assessor's decision to require supplemental declarations only of certain types of taxpayers who actually did acquire or who were likely to have acquired non-exempt personal property during the 1973 tax year does not result in a violation of the Idaho constitutional requirement of uniformity of taxation.

Xerox Corporation presented no evidence at trial, as did the plaintiff in *County of Maricopa v. North Central Development Co., supra*, which would indicate that the selective assessment procedure adopted by the assessor left a substantial amount of non-exempt personal property entering the county after January 1, 1973, untaxed. The assessor, on the other hand, testified that his office had compared the personal property declarations submitted by Ada County taxpayers from year to year and had isolated and classified those taxpayers who were most likely to acquire additional non-exempt personal property during the year. As a result of the data drawn from past declarations, supplemental declarations were automatically sent to lease companies, loaned equipment companies, sign companies, and vending machine companies. The assessor testified that businesses not included in the four classes which automatically received supplemental declarations usually did not, from year to year, report an increase in non-exempt personal property. The assessor also testified that his office actively sought to discover non-exempt property which may have been brought into the county after January 1, 1973, by taxpayers other than those who automatically received supplemental declarations.

"[D]uring the subsequent taxing time we have a policy of actively seeking out equipment and new businesses that have come into being since our first taxing time of the first six months of the year. And we do this by a couple of different methods. One is we actively cruise the areas, my people and myself actively cruise the county, looking for new businesses and looking for equipment. We'll jot down the name and address of the new business, we'll stop where we see a piece of equipment that's setting out in a field, or something of that nature, and go over and find out who owns it, get the serial number of it and go back in the office and check to see if we have that piece of equipment or if we have that business. Then if we don't, we will send out a new tax declaration. The other method is that we check the filings with the County Recorder's office for the filings of contracts, new contracts that are filed with the County Recorder's office, the equipment that has been purchased on contract. We check the Secretary of State's office which has a filing of contracts by companies of equipment that is being purchased and then we go back and we send out tax declarations to these individuals or companies requesting information on the equipment that they have purchased and then we issue a subsequent assessment."

It was the assessor's testimony that in 1973 it was not physically or economically feasible to require supplemental declarations of all taxpayers who filed initial declarations. The record does not show that the Ada County assessor in 1973 undertook a deliberate plan based upon an arbitrary or unjustifiable classification to discriminate in the assessment of ad valorem personal property taxes. To the contrary, it indicates that he used every effort within his resources to discover all non-exempt property within the county. Although certainly not perfect, the plan formulated by the assessor was based on reasonable classifications of the county's taxpayers. The record reveals no evidence of any discriminatory results other than Xerox's unsupported assertions that the county must have missed some non-exempt personal property which was acquired after January 1, 1973. We therefore affirm the district court's decision that Xerox has not shown a constitutional defect in the Ada County assessor's determination of which taxpayers were required to file supplemental declarations in 1973 pursuant to I.C. § 63–1203.

Ada County, on cross appeal, maintains that the district court erred in ruling that the assessor may not impose an ad valorem tax for the entire year on non-exempt property which a supplemental declaration indicated was sold by the taxpayer or removed from the county during the tax year. The assessor in 1973 levied an ad valorem tax for the entire year on non-exempt property reported in Xerox's initial declaration filed in January, 1973. Additional property reported in a supplemental declaration was assessed for a proportionate part of the year based upon the time the property entered the county.[6] However, the county did not reduce the tax levy on machines which were removed from the county before the end of the year. Although there was a net reduction in the total number of business machines owned by Xerox in Ada County in the third quarter of 1973, the assessor increased the tax assessment to reflect the fact that Xerox had brought new machines into the county that quarter. The county asserts that its practice is proper because the Idaho Code does not provide for removal of property from the ad valorem tax rolls during the course of the tax year.

■ We agree with the district court that the county must adjust Xerox's tax liability downward if the supplemental declarations indicate that a reduction in non-exempt property held in the county occurred during the tax year. To hold otherwise and to approve the county's practice would result in the imposition of a tax burden disproportionate to the actual value of the property assessed, in violation of Idaho Constitution, Art. 7, § 5. *See, e. g., Anderson's Red & White Store v. Kootenai County, supra.* Where the county undertakes to update its initial declarations during the course of the tax year, it cannot increase a taxpayer's tax burden to reflect the taxpayer's acquisition of non-exempt property without decreasing that tax burden to reflect the fact that property reported by the taxpayer in an earlier declaration was no longer subject to the county's ad valorem tax. Ada County's contention that the district court erred in ordering the county to cease assessing property which a supplemental declaration indicated was no longer subject to taxation is without merit.

■ Finally, both Xerox and Ada County argue on appeal that the district court erred in requiring the taxable status of the business machines in question to be determined on a monthly basis rather than on a quarterly basis. I.C. §§ 63–102 & –105S refer to the determination of the taxable status of property in the county on a quarterly basis. Although neither these two statutes, nor I.C. § 63–1203 which outlines the procedure for assessment of personal property indicate when supplemental assessments are to be filed, we agree with the county and Xerox that in the interests of efficient recordkeeping and reporting a quarterly reporting system, and not a monthly reporting system, is required. Because property is to be assessed on a quarterly basis,[7] administrative efficiency would be better achieved by a quarterly rather than a monthly declaration requirement.

Affirmed in part and reversed in part. No costs allowed.

DONALDSON, C. J., and SHEPARD, McFADDEN and BISTLINE, JJ., concur.

---

6. See n. 2, *supra.*

7. See n. 2, *supra.*