

Glen E. Walker, Kootenai County Pros. Atty., Susan E. Swanberg, Office of Pros. Atty., Coeur d'Alene, for respondent-appellant.

James R. Michaud, Coeur d'Alene, for appellant-respondent.

675 P.2d 819

**COEUR D'ALENE PUBLIC GOLF CLUB, INC.,**
**Appellant-Respondent,**

v.

**KOOTENAI BOARD OF EQUALIZATION, Respondent-Appellant.**

**No. 14566.**

Supreme Court of Idaho.

Jan. 23, 1984.

HUNTLEY, Justice.

Kootenai County Board of Equalization appeals a district court judgment granting tax exempt status to respondent Coeur d'Alene Public Golf Club course pursuant to I.C. § 63–105C. That section exempts from ad valorem taxation "[p]roperty belonging to any fraternal, benevolent, or charitable corporation or society ... used exclusively for the purposes for which such corporation or society is organized ...." The district court held that Coeur d'Alene Public Golf Club qualified as both a benevolent and a charitable organization. This court has had recent occasion to define the term "charitable" as it is used in I.C. § 63–105C in *Canyon County Assessor v. Sunny Ridge Manor*, 105 Idaho 98, 675

---

P.2d 813 (1984). The district court did not have the benefit of our opinion in that case when it issued its decision. Our task in the present case is to decide whether the findings and conclusions of the district court support a determination that the Coeur d'Alene Public Golf Course is a charitable or benevolent corporation in light of the principles set out in *Sunny Ridge.* We hold that they do.

In *Sunny Ridge* we noted that determination of a corporation's charitable status for the purposes of I.C. § 63–105C must be made on a case-by-case basis; it necessarily involves consideration of the particular circumstances of the organization seeking such status, and it is not susceptible of the application of hard and fast rules or definitions. 105 Idaho at 100, 675 P.2d at 815. We also noted that Idaho is in line with the majority of jurisdictions which hold that the contemporary definition of "charitable" comprehends more than "almsgiving to the poor." We stated:

"To be classed as charitable, an organization need not provide monetary aid to the needy; it may provide any of a number of services of public benefit. The word 'charitable' in a legal sense, includes every gift for general public use, whether it be for educational, religious, physical or social benefit." 105 Idaho at 100, 675 P.2d at 815 (Citations omitted).

Under this definition it is no bar to an organization's classification as charitable that the public benefit it provides is primarily recreational. Public recreational facilities serve community social and physical needs, as well as providing some educational benefits. In *North Idaho Jurisdiction of Episcopal Churches, Inc. v. Kootenai County,* 94 Idaho 644, 496 P.2d 105 (1972), this court held that property used by religious organizations for summer youth camps was entitled to exemption under I.C. § 63–105. We noted that:

"[S]uch encampments serve the young people of the State of Idaho and predominantly those who otherwise would have no access to or could not afford to enjoy the beauties of nature and the benefits of living for a short time in an outdoor environment with the benefits of wholesome recreation and education in the virtues of good morals, etc." 94 Idaho at 650, 496 P.2d at 111.

Rather than seeking to determine a corporation's charitable status solely by means of certain predetermined classifications of the services it provides (e.g. "recreational" or "educational"), the courts look to the "public" nature of the benefits or services. For a corporation's uses to be considered charitable it is essential that they provide some sort of general public benefit. There are several considerations, some of which bear on this issue of public benefit, which courts have looked to as determining an organization's charitable status. A number of those considerations are listed in *Sunny Ridge:*

"(1) the stated purpose of the corporation or organization's undertaking, (2) whether its functions are charitable (in the sense just discussed), (3) whether it is supported by donations, (4) whether the recipients of its services are required to pay for the assistance they receive, (5) whether there is general public benefit, (6) whether the income received produces a profit, (7) to whom the assets would go upon dissolution of the corporation, and (8) whether the "charity" provided is based on need." 105 Idaho at 100, 675 P.2d 815 (citation omitted).

These factors do not constitute a formal checklist for deciding if a corporation is "charitable"; rather they serve only as guidelines for the court's application of the definition of "charitable" as to a particular corporation.

In the instant case, the district court sets out several facts (stipulated by the parties at trial) relevant to the factors just mentioned. Coeur d'Alene Public Golf Club was incorporated for the stated purpose of promoting the game of golf and holding and selling real estate for the operation of a golf course. While operation of a golf course and promotion of the game of golf do not accord with the most traditional definitions of "charity," there is no ques-

tion but that they provide a benefit to the community in the form of social and recreational facilities. Government has recognized their benefit, as is evidenced by the large number of municipally owned golf courses.

The first nine holes of the golf course, in operation since the early 1950's, were constructed with donated money and labor. Money obtained from the sale of residential lots in proximity to the golf course provided the balance of funds necessary for completion of the course. Although users of the course facilities are required to pay green fees, the fees merely supplement the source of funds provided by the sale of the residential properties, which funds have been used to pay for the development and improvement of the course and clubhouse. Because significant expenses of development or operation were provided for out of contributions or sale of the corporation's land, the users' green fees cover only a part of the total cost involved in establishing and maintaining the golf course. The corporation was not organized for profit; the board of directors are not compensated; no dividends are distributed. Any net income is put back into the golf course in the form of improvements. There is no corporate stock issued, and the articles of incorporation provide that upon dissolution the corporation's property would be donated to charitable uses.

While it may not be said that a golf course fulfills a public need in the same sense that a hospital or other more traditional charitable institution does, a public golf course nevertheless provides a community service. As the district court stated in its memorandum opinion, "that the state has recognized and accepted such a concept [that the government has an interest in providing social and recreational facilities for the well-being of its citizens] is demonstrated by the operation and maintenance of state parks, making state lands available for hunting, hiking, sightseeing, etc.; providing for acquisition of public access to navigable waters; providing that gymnasium and recreational districts may be organized; authorizing municipalities to acquire, own and operate golf courses."

Appellant argues that there is a requirement for tax exempt status that the charitable organization lessen the burden of government. We have indicated that this is only a factor, albeit an important one, in determining tax exempt status. This factor goes to the question of degree of public benefit. To the extent that a charitable corporation performs a function otherwise required of the government, the public benefit is clear and direct. It is possible that, where municipalities are empowered to maintain public golf courses, in the absence of respondent's nonprofit course, the city might undertake to establish its own. It cannot be said, however, that such an activity is an "obligation" of government. Nevertheless, in *Canyon County Assessor v. Sunny Ridge Manor*, 105 Idaho 100, 675 P.2d 815 (1984), we noted that where there is no benefit to the community which might normally require government funds, the corporation seeking an exemption bears a greater burden to show general public benefit. In this case there is no limited, definite group of persons who would benefit from the tax exemption at the expense of the community as a whole—that is, unless one considers golfers in general as such a group. We may take judicial notice of the fact that golf is a game of broad public appeal and general community interest, however. In any case, to deny application of the state's exemption statute to one type of recreational facility is to deny it to all, an unfortunate result for the truly charitable public recreational facility.

Lest our decision upholding the granting of tax exempt status to the Coeur d'Alene Public Golf Course be taken as inconsistent with our prior denial of such status to an old-age retirement center in the *Sunny Ridge* case, we point out several notable distinctions:[1] first, Sunny Ridge Manor

---

1. This superficial incongruity no doubt presented a ready target for the dissent. But, the dissent misses the point of the majority holding. The fortuity that today's decision involves a golf

benefited a relatively small group of individuals who were shown to be capable—both financially and physically—of taking care of themselves. The entire cost of operation of the facility was borne by the recipients of its services. Except for the absence of profit-making, there was little difference between Sunny Ridge Manor and a commercial condominium complex or other type of controlled community. There was evidence of only limited donations to support the facility, and much of that was from its residents. There was no evidence that any outside donations had ever been used to reduce the cost of service provided. In the present case the community at large benefits from the reduced cost and broad availability of the golf course. The reduced cost is a function of substantial donations. The golf course also provides instructional golf at reduced rates to students at North Idaho College and Kootenai County School District 271. A significant benefit flows to the community in the form of relatively inexpensive recreation, made possible by donations.

The *Sunny Ridge* decision was a narrow one, limited to the circumstances shown to be present at that time. We indicated that under slightly different circumstances the determination might be different. Important to our decision in that case was the fact that Sunny Ridge Manor had not yet acted in accordance with the charitable purposes set out in its articles of incorporation. 105 Idaho at 103, 675 P.2d at 818.

Holding, as we do, that the Coeur d'Alene Public Golf Course is a charitable corporation within the meaning of I.C. § 63–105C and is thereby exempt from property taxation, we do not reach the issue of whether the golf course property has value for tax purposes.

The judgment of the district court is affirmed, parties to bear their own costs.

DONALDSON, C.J., and BISTLINE, J., concur.

SHEPARD, J., concurs in the result.

course and not an old-age retirement center ought not to cloud the truly relevant differences: degree of public access, benefit and sup-

BAKES, Justice, dissenting:

While the majority is correct in stating that the term "charitable" should include more than the traditional "alms-giving to the poor," I must say that the majority will be viewed as being exceedingly "contemporary" by concluding that "charitable" encompasses "promoting the game of golf." I dissent.

The majority senses, quite justifiably, that its opinion granting tax exempt status to the Coeur d'Alene Public Golf Club will be viewed as inconsistent with our recent prior denial of such status to an old-age retirement center in *Canyon County Assessor v. Sunny Ridge,* 105 Idaho 98, 675 P.2d 813 (1983). Therefore the majority attempts to point out the following "notable distinctions" between the cases.

First, the majority states that "Sunny Ridge Manor benefited a relatively small group" able to physically and financially take care of themselves. However, there is no evidence in the record to show that the golf club members or its patrons are somehow not physically or financially able to care for themselves. It is common knowledge that most golfers are healthy. The fact that the club has ingeniously created a marketing scheme to partially finance its game through its real estate sales seems to indicate financial savvy. There are no facts in the record to show that the number of club members or patrons of this particular club constitutes a great percentage of the community. Nor should this case turn on any perceived determination that the "broad public appeal" of golf is greater than the "broad public appeal" of taking care of the elderly. This case cannot be distinguished from *Sunny Ridge* on the first perceived distinction.

Next, the majority states that the entire cost of the operation of the Sunny Ridge Retirement Home was borne by the recipients of its services. The evidence shows

port. On these points there was substantial variance between the two facilities.

that the patrons of the club also pay for their services. The remaining operating costs are paid by the proceeds from the sales of real estate. The buyers of the real estate apparently are willing to pay enhanced prices for the proximity to and the view of the golf course from their backyards. The fact that a business uses revenues from one segment of its consumers to subsidize another segment of its consumers does not mean that the former is making a charitable donation to the latter. Each is paying the price that the market will bear.

Next, the majority states that "except for the absence of profitmaking," there is little difference between Sunny Ridge Manor and a commercial condominium complex. However, the golf club in the present case is probably even more similar to commercial golf courses than Sunny Ridge Manor is to its commercial counterpart. The club contains the requisite eighteen holes, restaurant and pro shop. The only noticeable difference might be lower green fees. I point out that the residents of Sunny Ridge Manor also received medical care for substantially lower fees.

Next, the majority concludes that in *Sunny Ridge* there were only limited donations to support the facility, and much of that from its residents, who were also recipients of the services. However, in this case the club has also been the recipient of only limited donations. We do not know that the initial acreage was donated. The stipulated facts state only that it was "acquired." In fact, the *only* donations were to partially finance the construction of the first nine holes in the early 1950's. The facts do not reveal from whom the donations came; the reader must speculate as to whether the donors were members of the club and enthusiastic patrons who are also recipients of the services.

Finally, the majority states that there was no evidence in *Sunny Ridge* of outside donations to reduce the cost of services. Neither is there such evidence in this case. The facts do not state the source of the limited donations in the early 1950's.

The majority goes on to imply that the purchasers of adjoining real estate are making donations to the golf club and its patrons. The purchasers are receiving valuable real estate for their purchase price and are in no way making outside charitable donations to the golf club. The reduced rate for golf instruction to student groups is a common marketing tool used by recreational facilities. The theory is that the students will enjoy and take up the game and return many times to the facility at the regular rate. The club has failed to show that its motivation is any different from that of any other commercial recreational facility which provides cut rates to instruct students. The majority's attempt to distinguish *Sunny Ridge* is unpersuasive.

The majority states:

"To deny application of the state's exemption statute to one type of recreational facility is to deny it to all, an unfortunate result for the truly charitable public recreational facility."

I fear that this will be interpreted as a blanket exemption to any non-profit organization providing recreation for a fee. The very reason that the Court approaches these exemptions on a "case by case" basis is to weed out the "truly charitable" from the "not so truly charitable." Each recreational facility must be required to prove its own set of facts and circumstances entitling it to a charitable exemption. The facts stipulated in this case do not provide an adequate basis on which to analyze the eight considerations set out in *Sunny Ridge* as to whether the facility could qualify as a "charity." For example: how did the club acquire the initial acreage of real estate? If donated, were the donors members of the club, or did they receive benefits? What percentage of the construction cost was donated? In how many years has the club made a profit, and how much profit? Are the restaurant and pro shop leased out to private entrepreneurs as is often the case? What percentage of the community uses the facility? How much lower are the "green fees" charged by the club when compared to other private golf courses? What percentage of the operat-

ing costs is financed by the "green fees"? What is the motivation of the club in providing reduced rates to instruct students? What specific charity or type of charity would the assets be donated to upon dissolution? (With "charity" defined as broadly as the majority does today, it could conceivably be another profitmaking venture.) Answers to these questions would be extremely relevant to the eight considerations outlined in *Sunny Ridge.*

The burden is on the club to establish clearly the right to an exemption. *Bistline v. Bassett,* 47 Idaho 66, 272 P. 696 (1928). "Idaho is committed to the rule that: [a] statute granting tax exemption ... be strictly construed ...." *North Idaho Jurisdiction of Episcopal Churches, Inc. v. Kootenai County,* 94 Idaho 644, 647, 496 P.2d 105, 108 (1972). *See, e.g., Xerox Corp. v. Ada County Assessor,* 101 Idaho 138, 609 P.2d 1129 (1980). On the slim factual showing in this case, the club has failed to carry its burden, and a strict construction of I.C. § 63–105C does not allow the club a property tax exemption as a "benevolent or charitable corporation."