*In re* APPLICATION OF JAMES H. CLARK, County Treasurer.—(JAMES H. CLARK, Applicant-Appellee and Cross-Appellant, *v.* MARIAN PARK, INC., Objector-Appellant and Cross-Appellee—(THE CITY OF WHEATON, Petitioner-Appellee and Cross-Appellant).)

Second District   No. 79-20

Opinion filed January 30, 1980.

Bonnie M. Wheaton and Francis X. Riley, both of Wylie & Mulherin, of Wheaton, for appellant.

J. Michael Fitzsimmons, State's Attorney, and Edward J. Walsh, Jr., both of Wheaton (George J. Sotos, Assistant State's Attorney, of counsel), for appellees.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

On March 9, 1970, the city of Wheaton entered into an annexation agreement with the owner of certain real estate. At the time the agreement was entered into, the real estate was exempt from taxation because the owner was a religious organization. Paragraph 13 of the annexation agreement stated that when the owner obtains a firm commitment of financing for construction of an improvement on the first parcel, it will cause that parcel to be placed on the county tax rolls. The

same terms and procedure was to be followed for each additional parcel. Paragraph 13 also stated that it was "the intention of the Owner that all of the Subject Realty, and all improvements thereon, shall become as fully taxable as privately owned real estate within the State of Illinois." Further, the annexation agreement provided that it was binding upon successors in title to the real estate and to any successor municipal corporation to the city of Wheaton.

The tax objector herein, Marian Park, Inc., was formed by the prior owner as a general not-for-profit corporation to own and operate on the various parcels of real estate here involved federally subsidized low and moderate income rental housing units for the poor, elderly and handicapped. Subsequent to the signing of the annexation agreement, title was transferred to Marian Park, and the land was annexed to Wheaton.

On November 24, 1976, Marian Park filed an objection to an order for judgment and sale of part of the land. The judgment had been obtained on application of the county collector for delinquent real estate taxes for the year 1975. A hearing was held on the objection, and the trial court found that Marian Park was exempt from real estate taxation as a charitable organization. Wheaton thereafter filed a petition to vacate the order, alleging that it was a necessary party and that it had not received notice of the original hearing. The trial court thereupon vacated the previous order and set the matter for a new hearing. Marian Park petitioned for a rehearing of the Wheaton petition, and the court denied Marian Park's petition for rehearing.

At the conclusion of the new hearing, the trial court found that Marian Park was exempt from real estate taxation because it was a charitable organization but that Marian Park waived its exemption from real estate taxation under the provisions of paragraph 13 of the annexation agreement. The court vacated its original order and entered judgment against the land for the amount of taxes, interest, penalties and costs due and ordered that such of the land as is necessary be sold to pay the judgment. Marian Park's notice of appeal is taken solely from that portion of the order that reversed the original order; Wheaton and the county collector cross-appeal as to the finding that Marian Park qualifies as an exempt organization for real estate tax purposes.

●■ ■ The central question is whether Marian Park is a charitable organization and is therefore exempt from real estate taxation under section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 500.7). Regardless of exemptions declared by the legislature, it is within the power of the courts of this State to determine whether an organization is a charitable organization. (*Illinois Hospital & Health Service, Inc. v. Aurand* (1978), 58 Ill. App. 3d 79, 373 N.E.2d 1021.) Exemption from

Federal income tax and from State sales and use tax is not determinative of whether the subject property is used for charitable purposes. (*People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 264 N.E.2d 4.) Also, the burden of proving the exemption is on the party seeking it; all facts are to be construed and all debatable questions are to be resolved in favor of taxation. *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 233 N.E.2d 537.

■■ In the latter case, the supreme court set forth certain guidelines for determining whether an organization qualifies for an exemption as a charitable organization. For an organization to be considered charitable for purposes of obtaining the exemption the following six factors must be present:

> (1) the benefits derived are for an indefinite number of persons;
> (2) the organization has no capital, capital stock or shareholders, and does not profit from the enterprise;
> (3) funds are derived mainly from private and public charity, and the funds are held in trust for the objects and purposes expressed in the charter;
> (4) the charity is dispensed to all who need and apply for it;
> (5) no obstacles appear to be placed in the way of those seeking the benefits; and
> (6) the exclusive (primary) use of the property is for charitable purposes.

■■ Examining the record of the present cause in light of the guidelines set out above, we view the following as being the determinative facts in deciding whether Marian Park is qualified for exemption as a charitable organization. First, the operating funds do not come primarily from public or private charity but rather from rent payments by residents and the Federal subsidy (the latter pays all but one percent of the mortgage interest). Second, not everyone who needs the help can obtain it since certain financial and medical requirements must be met by applicants before they are admitted as residents; these requirements additionally serve as obstacles which are placed in the way of those seeking the benefits. Third, there have been several judicial evictions of tenants who failed to pay rent, and there have been elderly persons asked to leave because their health was failing. In light of the foregoing facts, it cannot reasonably be concluded that Marian Park, Inc., is a charitable organization as has been defined by the supreme court; accordingly, the real estate of Marian Park here involved is not entitled to exemption from taxation.

Marian Park's notice of appeal is taken only from that part of the order of October 17, 1978, which vacated the original order of February 10, 1978; the only relief prayed for is that we reverse the part of the

October 17 order which vacated the February 10 order and that we reinstate the February 10 order. In its briefs before this court, Marian Park has argued that Wheaton should not have been allowed to bring its petition to vacate because the city lacked standing to object; that it lacked authority to enter into the agreement contained in paragraph 13; and that since the levy, assessment and collection of real estate taxes as provided by statute does not extend to municipal corporations, Wheaton lacked authority to participate in a real estate tax matter.

Wheaton's original petition to vacate cites section 18 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 18) as the basis for its entitlement to notice. This section only explains how to give notice to a municipality. However, Wheaton's reply to Marian Park's petition for rehearing on the vacating of the order does specify a failure to give notice under section 194 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 675). We accordingly conclude that the trial court was properly appraised of the notice issue, at that point at which it denied Marian Park's petition for rehearing.

■■ Marian Park also points out that the annexation agreement was entered into under the Illinois Constitution of 1870. It argues that Dillon's Rule therefore applies and that Wheaton accordingly had only those powers to contract which were expressly granted or necessarily implied by the legislature. Certainly even under the old constitution a city could make a valid annexation agreement. (*Elm Lawn Cemetery Co. v. City of Northlake* (1968), 94 Ill. App. 2d 387, 237 N.E.2d 345.) Specifically, since 1963 municipalities have been authorized to enter into annexation agreements; the authorizing legislation even includes provisions for "Any other matter not inconsistent with the provisions of this Code, not forbidden by law." (Ill. Rev. Stat. 1963, ch. 24, par. 11—15.1—2(f).) A landowner's agreement that it will allow itself to be taxed, thereby impliedly waiving any possible exemption from taxation, does not appear to be unauthorized in light of the foregoing provision. Further, Marian Park has accepted the benefits of the annexation agreement by accepting services provided by the city of Wheaton and is therefore not in a position to complain.

As to the power to determine taxes, Wheaton concedes that it has no authority to determine real estate tax liability for revenue purposes but urges that it does have the power to levy and collect taxes for corporate purposes. (Ill. Rev. Stat. 1977, ch. 24, par. 8—3—1.) The distinction is sufficient in our view to undercut Marian Park's position, which basically relates to assessments and exempting property from taxation, neither of which Wheaton has done. For the above reasons, we hold that the annexation agreement is valid and enforceable by Wheaton.

Although Marian Park has not specifically appealed from the trial court's finding that paragraph 13 of the annexation agreement constituted a waiver of exemption, we deem it appropriate to briefly discuss the provisions contained in that paragraph. The language in question is as follows:

"13. Owner agrees that as soon as a letter of firm committment of financing is obtained for construction of Parcel 1—A it will cause the land comprising said Parcel 1—A to be placed on the tax rolls of the County. As financing is obtained for each subsequent stage, the land comprising each stage shall thereupon be placed on the tax rolls of the County, it being the intention of the Owner that all of the Subject Realty, and all improvements thereon, shall become as fully taxable as privately owned real estate within the State of Illinois."

Marian Park produced testimony in the trial court to the effect that this language merely expressed a timetable for the development of the buildings and the various parcels of land within the Marian Park project. In our opinion, such parole evidence is improper to explain the meaning of paragraph 13. The plain language of that paragraph states, first, that upon obtaining of financing the owner would place each successive parcel on the tax rolls of the county; the paragraph further provides an express indication of the intent of the owner that the property be taxed fully as though it were privately owned real estate. The plain language is, in our opinion, clear and needs no explanation. The owner agreed that the land was to be fully taxed and that agreement is, within the terms of the annexation agreement, binding upon successors in title.

We accordingly reverse the determination of the trial court that Marian Park is a charitable organization for real estate tax purposes; we affirm its determination that the annexation agreement has waived the exemption, and we affirm the judgment and order for sale of the real estate in question to satisfy the real estate tax for 1975.

Affirmed in part and reversed in part.

NASH and LINDBERG, JJ., concur.