799 P.2d 974

**BOGUS BASIN RECREATIONAL ASSOCIATION, INC., an Idaho non-profit corporation, Appellant–Respondent on Appeal,**

v.

**BOISE COUNTY BOARD OF EQUALIZATION; County of Boise; and Boise County Board of County Commissioners, sitting as the Board of Equalization, Appellees–Appellants on Appeal,**

and

Idaho State Tax Commission, Intervenor–Appellant on Appeal.

Nos. 17643, 17676.

Supreme Court of Idaho.

Oct. 25, 1990.

Jim Jones, Atty. Gen., and Kelly W. Wright, Deputy Atty. Gen., (argued) Boise, for appellant Tax Com'n.

J. Patrick Riceci, Boise, for appellant Boise County.

Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for respondent. Berry Newall Squyres, Jr., argued.

BISTLINE, Justice.

The Bogus Basin Recreational Association (BBRA) is a non-profit organization which has been incorporated since 1941 and which has operated the Bogus Basin Ski Area since 1953. The BBRA has a two-tiered governing structure which consists of a fifty-member community body selected

by the board of directors; the thirteen-member board is in turn elected by the fifty community representatives. Neither body's members are compensated in any way, with the exception of free skiing privileges for the board of directors.

The bylaws and articles of incorporation of the BBRA provide that any income from the corporation should be reinvested in the recreation facilities. No stock in the corporation is to be issued, nor are any members of the corporation to have any vested interest in the property or assets of the corporation. If the corporation is dissolved, its property and assets are to be transferred to any non-profit entity (or entities) organized to pursue recreational activities for the benefit of the public.

Fees are charged for the use of BBRA facilities. In 1986, the price of an adult lift ticket was $18.50, which was comparable to the lift ticket prices of other commercial ski areas in Idaho with similar facilities. Some discount tickets are offered to students and other special groups. The ski area also has educational programs/discounts offered in cooperation with Boise City recreation and with school districts in the Treasure Valley.

The BBRA reported a net income of $300,444 in 1986. Because it is a non-profit organization, the BBRA paid no tax on that income. In 1987, the association was assessed property taxes of $36,136.36 on property with an assessed market value of $4 million.

On June 11, 1987, the BBRA filed a claim with the Boise County Board of Equalization (Board) for property tax exemption pursuant to I.C. § 63–105C. The Board denied the exemption at the initial hearing and again on reconsideration. The BBRA appealed to the district court, requesting a trial *de novo*.

While the appeal was pending, the court granted the Idaho State Tax Commission's (Commission) motion for permission to intervene. After hearing arguments on all parties' motions for summary judgment, the district court granted the BBRA's motion and permitted the exemption. The Board and the Commission filed separate appeals. This Court ordered the appeals consolidated.

The trial court was correct in asserting that this case is governed by the principles enunciated in *Appeal of Sunny Ridge Manor, Inc.*, 106 Idaho 98, 675 P.2d 813 (1984), and *Coeur d'Alene Public Golf Club, Inc. v. Kootenai Board of Equalization*, 106 Idaho 104, 675 P.2d 819 (1984). The trial court was also correct in its understanding that *Appeal of Sunny Ridge Manor* and *Coeur d'Alene Golf Club* expanded the class of organizations that can be considered charitable for purposes of Idaho Code § 63–105C beyond the traditional sense of religious and philanthropic organizations. Thus, an organization responsible for administering a ski area could, under the proper circumstances, qualify as such a charitable organization.

However, not every non-profit organization that provides some service to the public is entitled to claim that its property is exempt from taxation. *Appeal of Sunny Ridge Manor* and *Coeur d'Alene Golf Club* recognized that "charity" is not limited to religious and philanthropic activities, but it did not change the basic rules in tax exemption cases: Statutes granting tax exemptions must be strictly construed against the taxpayer and "cannot be extended by judicial construction so as to create an exemption not specifically authorized." "Exemptions are never presumed. The burden is on a claimant to establish clearly a right to exemption." *Upper Columbia Mission Soc'y v. Kootenai County*, 93 Idaho 880, 882–83, 477 P.2d 503, 505–06 (1970). *See also Appeal of Sunny Ridge Manor*, 106 Idaho 98, 675 P.2d 813 (1984) (retirement center which provided services "of great benefit" to its elderly residents and whose efforts as a non-profit corporation were "praiseworthy" nevertheless did not meet its burden of demonstrating that it was entitled to property tax exemption); *Richardson v. State Tax Comm'n*, 100 Idaho 705, 710, 604 P.2d 719, 724 (1979) ("[t]ax exemptions . . . will not be created by implication"). An organization seeking to exempt it property from taxation must satisfy the requirements set

forth in *Appeal of Sunny Ridge Manor* and *Coeur d'Alene Golf Club* in order to qualify for such an exemption.

■ The requirements set forth in *Appeal of Sunny Ridge Manor* and *Coeur d'Alene Golf Club* are themselves a matter of law, but whether the requirements have been met in a specific case is a question of fact. *Appeal of Sunny Ridge Manor*, 106 Idaho at 100, 675 P.2d at 815. Issues such as whether the BBRA is supported by significant donations, whether the fees charged to skiers are sufficient to cover the operating expenses of the BBRA, and whether the operation of the ski area by the BBRA benefits the public at large, were hotly debated before both the trial court and this Court. It was therefore error for the trial court to conclude that no disputed issues of material fact remained and that the case was ripe for summary judgment. *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1987).

■ The Board and the Commission have raised the question of whether BBRA property leased to commercial enterprises would also qualify for the exemption if the BBRA is ultimately determined to be a charitable organization for purposes of I.C. § 63–105C. Because this is a question which may arise again in the context of this case, we will address it. Idaho Code § 1–205.

Idaho Code § 63–105C provides in relevant part:

> **63–105C. Property exempt from taxation—Fraternal, benevolent, or charitable corporations or societies.**—The following property is exempt from taxation: Property belonging to any fraternal, benevolent, or charitable corporation or society, the World War veteran organization buildings and memorials of this state, used exclusively for the purposes for which such corporation or society is organized; provided, that if any building or property belonging to any such corporation or society is leased by such owner *or* if such corporation or society uses such property for business purposes from which a revenue is derived which, in the case of a charitable organization,

is not directly related to the charitable purposes for which such charitable organization exists, then the same shall be assessed and taxed as any other property, and if any such property is leased in part or used in part by such corporation or society for such purposes the assessor shall determine the value of the entire building [and the value of the part used or leased for commercial purposes. If the value of the part used for commercial purposes is determined to be three per cent (3%) or less than the value of the entirety, the whole of said property shall remain exempt. If the value of the part used for commercial purposes is determined to be more than three per cent (3%) of the value of the entirety, the assessor shall] assess such proportionate part of such building including the value of the real estate as is so leased or used for such purposes, and shall assess all merchandise kept for sale, and the trade fixtures used in connection with the sale of such merchandise....

(Emphasis added.) We find nothing ambiguous in this portion of the statute—if any building or property belonging to a charitable organization, or any part of such building or property, is leased, to anyone, then the building or property is subject to assessment and taxation unless it constitutes less than 3 percent of the value of the entire building or property. BBRA does lease part of its Bogus Basin facilities to commercial enterprises. On remand, therefore, the question of whether the leased property exceeds the 3 percent de minimis exception of I.C. § 63–105C, and if so, how much of the BBRA property would still be subject to taxation even if the majority of the property is exempt, should be addressed.

Costs on appeal awarded to the Board.

BAKES, C.J., and JOHNSON, BOYLE and McDEVITT, JJ., concur.