831 P.2d 535

In the Matter of Tax Exemption for Parcels Pibcentra01 & F5538940710 Boise Central Trades & Labor Council, Inc.

BOISE CENTRAL TRADES & LABOR COUNCIL, INC., an Idaho non-profit corporation, Petitioner–Respondent–Cross Appellant,

v.

BOARD OF ADA COUNTY COMMISSIONERS, Sitting as the Ada County Board of Equalization; and Bill Schroeder, in his official capacity as Ada County Assessor, Respondents–Appellants–Cross Respondents.

No. 18890.

Supreme Court of Idaho, Boise, February 1992 Term.

April 14, 1992.

**68**

Greg H. Bower, Ada County Pros. Atty., and Theodore E. Argyle, Deputy Pros. Atty., argued, Boise, for appellant.

Seiniger, Nevin, Kofoed & Herzfeld, Boise, for respondent. Alan C. Herzfeld argued.

BAKES, Chief Justice.

The appellant Board of Ada County Commissioners, sitting as the Ada County Board of Equalization (Board), appeals from the district court's finding that the Boise Central Trades & Labor Council, Inc. (Labor Council) is a fraternal organization entitled to a real and personal property tax exemption pursuant to I.C. § 63–105C. The Labor Council cross-appeals from the district court's denial of its request for attorney fees. We affirm in part and remand for further proceedings.

The Labor Council, a non-profit Idaho corporation whose membership is comprised of local unions, councils, and related organizations chartered by or affiliated with the AFL–CIO, owns real property located in Ada County known as the "Boise Labor Temple" (Labor Temple). The Labor Temple houses offices, conference rooms, and a meeting room which are primarily occupied by the Labor Council's labor organization members who pay rent for their space to the Labor Council. Additionally, for the tax years 1987 and 1988, a life insurance company and a credit union rented space in the Labor Temple, and free office space was provided for the Idaho Workers Opportunity Network and the Food Bank.

Prior to 1987, the Labor Temple had been exempted by Ada County from ad valorem taxation on the basis that the Labor Council was a fraternal organization and entitled to tax exempt status under I.C. § 63–105C. In May of 1987, the Labor Council received its 1987 Ada County assessment notice, which again designated the Labor Temple as "exempt property." However, in November of 1987, the Labor Council received a second 1987 Ada County assessment notice, this time assessing the Labor Temple at its market value for assessment purposes. Upon inquiry to the Board, the Labor Council was advised that it would have to make a re-application for tax exempt status for the 1987 tax year.

The Labor Council filed a reapplication for tax exemption status and a hearing was held before the Board, which denied the Labor Council's application for tax exempt status for 1987. Later, in 1988, a similar situation occurred, and the Labor Council was also denied tax exemption status for the 1988 tax year.

The Labor Council filed a petition for review and complaint for declaratory relief and for an injunction against the collection of the taxes for 1987 and 1988.[1] The cases for the two years were consolidated, and cross motions for summary judgment were filed, supported by stipulated facts and exhibits. On July 19, 1990, the trial court granted the Labor Council's request for tax exemption status, finding that the Labor Council had "met its burden in showing that it is a fraternal organization and that any income derived beyond membership was generated in furthering the purposes of the fraternal organization." The district court also ordered that any taxes paid by the Labor Council be reimbursed.

The Labor Council subsequently requested costs and attorney fees, which the district court initially granted. However, the Board filed a motion to reconsider which was granted, and the Labor Council was then denied attorney fees on the basis that there was no contract or statute entitling it to attorney fees. This appeal followed.

## I

■ The Board contends on appeal that the district court erred in concluding that the Labor Council is a "fraternal organization" within the meaning of I.C. § 63–105C. Recently, in *Evangelical Lutheran Good Samaritan Society v. Board of Equalization of Latah County*, 119 Idaho 126, 804 P.2d 299 (1990), this Court restated the requirement that to obtain an exemption under I.C. § 63–105C, "the organization must first prove that it is a charitable [fraternal] organization and, secondly, that the claimed exempt property is used exclusively for charitable [fraternal] purposes."

119 Idaho at 131, 804 P.2d 299 (emphasis omitted). *See also Appeal of Sunny Ridge Manor, Inc.*, 106 Idaho 98, 675 P.2d 813 (1984). Therefore, the first issue we must address is whether the trial court erred in concluding that the Labor Council is a fraternal organization which uses its property exclusively for fraternal purposes. This issue presents a mixed question of law and fact.

The issue of law concerns the definition of "fraternal" for tax exemption purposes pursuant to I.C. § 63–105C. Regarding this issue, the Court's standard of review is free review of the decisions of the district court. *Moses v. Idaho State Tax Com'n*, 118 Idaho 676, 799 P.2d 964 (1990); *Clark v. St. Paul Property & Liability Ins. Co.*, 102 Idaho 756, 639 P.2d 454 (1981). The issues of fact concern whether the Labor Council qualifies as a fraternal organization and whether its use of the property entitles it to a tax exemption under I.C. § 63–105C.

Generally, "[w]hen a trial judge passes upon a motion for summary judgment, and when this Court reviews the grant of a motion for summary judgment, the standard is the same—all facts and inferences are to be construed in a light most favorable to the nonmoving party and summary judgment under I.R.C.P. 56(c) is inappropriate if any genuine issue of material fact remains unresolved." *Meridian Bowling Lanes, Inc. v. Meridian Athletic Ass'n, Inc.*, 105 Idaho 509, 512, 670 P.2d 1294, 1297 (1983). However, because both parties moved for summary judgment based on the same stipulated facts and on the same theories and issues, they effectively stipulated that there is no genuine issue of material fact. *Kromrei v. AID Ins. Co.*, 110 Idaho 549, 716 P.2d 1321 (1986); *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982). The trial court then is responsible for resolving any conflicting inferences. *Old West Realty, Inc. v. Idaho State Tax Com'n*, 110 Idaho 546, 716 P.2d 1318 (1986); *Riverside Develop-*

---

1. The stipulation of facts entered into by the parties indicates that at some undisclosed time the Labor Council paid the taxes under protest.

*ment Co. v. Ritchie, supra.* Thus, our review of the issues of fact in this case, as decided by the trial court, "extends only to determining whether the record is sufficient to justify the district court's finding[s]...." *Ritchie,* 103 Idaho at 520, 650 P.2d at 662.

This Court has never had occasion to define "fraternal" for purposes of I.C. § 63–105C, and it is not defined in the statute. However, other courts have considered the definition of "fraternal." In *In re Mason Tire and Rubber Co.,* 11 F.2d 556 (D.C.Cir.1926), the court defined "fraternal,"[2] to mean:

> Any society organized for the accomplishment of some worthy object through the efforts of its members working together in brotherly union, especially if it be organized not for selfish gain, but for the benefit of the membership or for the benefit of the membership and men in general, is a fraternal organization in the popular acceptation of the term.

11 F.2d at 557. Other courts have similarly defined the term "fraternal" for tax exemption purposes. *Woman's Club v. Township of Little Falls,* 20 N.J.Misc. 278, 26 A.2d 739 (N.J.St.Bd. of Tax Appeals 1942); *Alpha Rho Alumni Ass'n v. City of New Brunswick,* 126 N.J.L. 233, 18 A.2d 68 (1941). For purposes of I.C. § 63–105C, we conclude that to be "fraternal" an organization must be established to achieve some worthy objective which benefits its members or benefits men and women in general, without regard to profit.

■ Given this definition of "fraternal," we must next determine whether the record supports the trial court's findings that (1) the Labor Council qualified as a fraternal organization within the above stated definition, and (2) that the Labor Council used the Labor Temple exclusively for fraternal purposes during the 1987 and 1988 tax year.

Regarding the first finding, in *Appeal of Sunny Ridge Manor, Inc.,* 106 Idaho 98, 675 P.2d 813 (1984), this Court stated that

there are a number of factors which must be considered in the determination of charitable status under I.C. § 63–105C. Two of those factors, which are also applicable to the determination of fraternal status under I.C. § 63–105C, include the stated purposes of the petitioning organizations undertaking and whether the petitioning organization functions as a fraternal organization as it is defined. Although the "[d]etermination of an institutions charitable [fraternal] status is necessarily an individual matter, to be decided on a case by case basis," 106 Idaho at 100, 675 P.2d at 815, these two factors serve as a guideline for the trial courts application of the definition of fraternal to the Labor Council. *See Evangelical Lutheran Good Samaritan Society v. Board of Equalization of Latah County,* 119 Idaho 126, 804 P.2d 299 (1990); *Coeur d'Alene Pub. Golf Club v. Kootenai Bd. of Equalization,* 106 Idaho 104, 675 P.2d 819 (1984).

In this case, the record shows that the stated purposes of the Labor Council are:

(a) To promote fraternal, benevolent and educational principles for the mutual benefit, welfare, and improvement of its affiliated members, by appropriate activities, including the following:

(1) To serve as a means of exchanging information among affiliated organizations on matters of common interest.

(2) To provide aid, cooperation, and assistance to affiliated members and other affiliated organizations in their common and individual endeavors.

(3) To promote educational activities and programs on matters of interest to workers and affiliated members.

(4) To encourage workers to register and vote, to exercise their full rights and responsibilities as citizens, and to perform their rightful part in the public affairs of their communities, state and nation.

(b) To foster adherence to the principles of the American Federation of Labor and Congress of Industrial Organizations.

---

**2.** The *In re Mason Tire* definition currently forms the basis for the definition of "fraternal" in Black's Law Dictionary.

It is clear from these stated purposes that the Labor Council was organized to benefit its members. The record also shows that the Labor Council was established to benefit its members without regard to profit. It was stipulated by the parties that "[t]he Labor Council has historically not realized profit after paying the regular expenses associated with the mortgage and maintenance of the Labor Temple, [and] none of the Labor Council's officers, board members or delegates are compensated for their work on behalf of the Labor Council." Furthermore, consistent with its stated purpose, the Labor Council, through the use of the Labor Temple, provided offices, conference rooms and a meeting room at a reduced rate to its member tenants. No evidence was submitted that the Labor Council's members' use of this space was inconsistent with its stated purposes. Accordingly, the record is sufficient to support the trial court's finding that the Labor Council is a fraternal organization within the *In re Mason Tire* definition which we adopt.

■ Regarding the trial court's second finding, the trial court concluded that the Labor Council had met its burden in showing that it used the Labor Temple exclusively for fraternal purposes. In their objection to this finding, appellants point to the fact that during the 1987 and 1988 tax years, the Labor Council rented the offices of the Labor Temple to its members and to other outside organizations, mainly the insurance company and the credit union. As such, appellants argue that this Court's interpretation of I.C. § 63–105C in *Bogus Basin Recreational Ass'n, Inc. v. Boise County Board of Equalization,* 118 Idaho 686, 799 P.2d 974 (1990), precludes a finding that the Labor Temple was used exclusively for fraternal purposes. Particularly, appellants point to this Court's statement that "if any building or property belonging to a charitable [fraternal] organization, or any part of such building or property, is leased, to anyone, then the building or property is subject to assessment and taxation unless it constitutes less than 3 percent of the value of the entire building or

property." 118 Idaho at 688, 799 P.2d at 976.

To better understand what is deemed a "lease" for purposes of I.C. § 63–105C, a look at the entire language of the statute is necessary. Such an analysis can be made easier if the statute is broken into five parts as follows:

**63–105C. Property exempt from taxation—Fraternal, benevolent, or charitable corporations or societies.—[1]** The following property is exempt from taxation: Property belonging to any fraternal, benevolent, or charitable corporation or society, the World War veteran organization buildings and memorials of this state, used exclusively for the purposes for which such corporation or society is organized; **[2]** provided, that if any building or property belonging to any such corporation or society is leased by such owner or if such corporation or society uses such property for business purposes from which a revenue is derived which, in the case of charitable organization, is not directly related to the charitable purposes for which such charitable organization exists, then the same shall be assessed and taxed as any other property, **[3]** and if any such property is leased in part or used in part by such corporation or society for such purposes the assessor shall determine the value of the entire building [and the value of the part used or leased for commercial purposes. If the value of the part used for commercial purposes is determined to be three percent (3%) or less than the value of the entirety, the whole of said property shall remain exempt. **[4]** If the value of the part used for commercial purposes is determined to be more than three percent (3%) of the value of the entirety, the assessor shall] (and) assess such proportionate part of such building including the value of the real estate as is so leased or used for such purposes, and shall assess all merchandise kept for sale, and the trade fixtures used in connection with the sale of such merchandise [; **[5]** provided, however, that the lease or use of any property by any such corporation or society for athletic or

72

recreational facilities, residence halls or dormitories, meeting rooms or halls, auditoriums or club rooms within the purposes for which such corporation or society is organized, shall not be deemed a business or a commercial purpose, even though fees or charges be imposed and revenue derived therefrom].

Working through these five parts of the statute, it is clear that the legislature intended to exclude from exemption only those portions of an otherwise exempt property which are leased or used for *commercial purposes.*

The first section of the statute sets forth the basic requirements to qualify for an exemption under the statute: (1) that the property belong to a fraternal, benevolent or charitable corporation or society; and (2) that the property be used exclusively for the purposes for which the corporation or society was organized. If either of these two requirements are not met, no exemption will be given. *See Evangelical Lutheran Good Samaritan Society v. Board of Equalization of Latah County,* 119 Idaho 126, 804 P.2d 299 (1990); *Appeal of Sunny Ridge Manor, Inc.,* 106 Idaho 98, 675 P.2d 813 (1984).

The second section of I.C. § 63–105C provides that if a building or property owned by an otherwise-exempt organization is leased or used for business purposes from which a revenue is derived or, in the case of a charitable organization, used for revenue-generating purposes unrelated to its charitable purposes, then that property shall be assessed and taxed as if non-exempt. However, this section is qualified by the language of the third and fourth sections of the statute. Those sections of the statute specifically address how the property will be classified if only a part of it is leased or used for a business purpose from which a revenue is derived. Those sections state that the assessor should first determine the value of the entire building *"and the value of the part used or leased for commercial purposes."* (Emphasis added). Thereafter, "If the value of the part used for commercial purposes is determined to be three percent (3%) or less than

the value of the entirety, the whole of said property shall remain exempt." However, if the value of the part used for commercial purposes is greater than 3% of the value of the entire building, "the assessor shall ... assess such proportionate part of such building including the value of the real estate as is so leased or used for such purposes...." I.C. § 63–105C; *see also Bogus Basin Recreational Ass'n, Inc. v. Boise County Board of Equalization, supra.*

The fifth section of I.C. § 63–105C clarifies what will be considered "commercial purposes." Under this section, a lease or use for "athletic or recreational facilities, residence halls or dormitories, meeting rooms or halls, auditoriums or club rooms" that is consistent with the purpose of the organization, is not considered a "commercial purpose" even though the organization derives revenue from such use.

Applying the statute as a whole to the facts of this case, the record indicates that the only lease or rental of the Labor Temple which would be deemed a lease for "commercial purposes" is the renting of office space to the insurance company and the credit union. As far as the renting of the Labor Temple to the members of the Labor Council, we conclude that such is not a leasing for "commercial purposes" within the meaning of the statute. The renting of offices to the Labor Council's own members is analogous to the renting of rooms for residence halls or dormitories which has expressly been deemed not to be a commercial purpose under I.C. § 63–105C. Therefore, the portion of the Labor Temple leased to the Labor Temple's own members is not subject to assessment under the statute. The record supports the trial courts finding that this portion of the Labor Temple was used exclusively for fraternal purposes.

However, because the leasing of offices to the life insurance company and the credit union was a use for commercial purposes, as per the directions of I.C. § 63–105C, such portions of the Labor Temple must be assessed unless it constitutes less than three percent of the total value of the

Labor Temple. For the tax years 1987 and 1988, the Labor Council admitted that the value of this portion of the Labor Temple used in the renting to the insurance company and the credit union was greater than three percent of the total value of the Labor Temple. Since the leased portions do not fall within the 3% exception of the statute, the assessment and taxation of this portion of the Labor Temple was not exempt under I.C. § 63–105C.

Therefore, we vacate the court's judgment and remand for further findings to determine what percentage of the Labor Temple was rented to the insurance company and the credit union during 1987 and 1988, which would not be exempt from ad valorem taxes under I.C. § 63–105C.

## II

■ The next issue we must address is whether the trial court correctly concluded that the Labor Council was not entitled to attorney fees or costs under I.C. § 12–120. On cross-appeal, the Labor Council argues that the trial court erred in denying it attorney fees under I.C. § 12–120(1).[3] We find that trial court did not err.

The trial court denied the Labor Council's request on the basis that there was no ten-day written demand letter sent as required by I.C. § 12–120(1). In its brief, the Labor Council admits that it never sent a demand letter to the Board as required by the statute. However, the Labor Council argues that the legislative purpose behind the demand letter requirement was satisfied by other documents in this case and therefore the demand letter was unnecessary.

We find the legislative intent of I.C. § 12–120(1) to be clear. In order for a plaintiff to be awarded attorney fees under this section, there must be a claim for a sum of money less than twenty-five thousand dollars ($25,000), and a "written de-

mand for the payment of such claim *must have been made on the defendant not less than ten (10) days before the commencement of the action....*" In this case, the Labor Council's petition did not request a monetary judgment; rather, it sought a review of the decision of the Board, and asked for declaratory and injunctive relief. No written demand for payment of an amount less than $25,000 was made. I.C. § 12–120(1) is therefore inapplicable to this case. *Cf. Pancoast v. Indian Cove Irr. Dist.*, 121 Idaho 984, 829 P.2d 1333 (1992).

Affirmed in part and remanded for further proceedings. No costs or attorney fees allowed.

BISTLINE, JOHNSON and McDEVITT, JJ., and REINHARDT, J. Pro Tem., concur.

---

**3. 12–120. Attorney fees in civil actions.**—(1) Except as provided in subsection (3) of this section, in any action where the amount pleaded is twenty-five thousand dollars ($25,000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney fees. For the plaintiff to be awarded attorney fees, for the prosecution of the action, written demand for the payment of such claim must have been made on the defendant not less than ten (10) days before the commencement of the action....