855 P.2d 47

**In the Matter of the Appeal of Owyhee Motorcycle Club, from the Board of Equalization of Ada County for Tax Year 1989.**

**OWYHEE MOTORCYCLE CLUB, INC., Petitioner–Appellant,**

**v.**

**ADA COUNTY, a political subdivision of the State of Idaho, and the Ada County Commissioners sitting as the Board of Equalization, Respondents.**

No. 19773.

Supreme Court of Idaho, Boise, January 1993 Term.

June 10, 1993.

Raymond W. Setzke, Jr., Boise, for appellant.

Greg H. Bower, Ada County Pros. Atty. and Eric T. Krening, Deputy Pros. Atty., Boise, for respondents. Eric T. Krening argued.

TROUT, Justice.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

In this case, the Owyhee Motorcycle Club (OMC) claims tax exempt status as a nonprofit charitable organization organized for the purpose of promoting the recreational use of motorcycles.

OMC was founded in 1939, and in 1943, purchased eighty acres in Ada County which are the subject of this action. Approximately forty of the eighty acres are too steep to use. On the remaining acreage OMC operates three types of motorcycle race tracks. OMC sponsors races on these tracks fifty to sixty times a year.

In 1989 OMC generated $112,000.00 in gross income from fees charged to spectators and race participants. In addition, OMC estimates that its members donate about $46,000 in time and equipment each year. The Club does not receive any substantial donations from outside its membership. OMC retains a marginal profit and does not have any paid employees.

In 1989, OMC charged the general public a fee of two dollars for ages twelve and under and five dollars for all others who wished to watch the races. If members of the general public chose to participate in the races, they paid a gate fee of five dollars plus a competition fee of ten to twenty dollars per race. OMC members did not have to pay the gate fee when participating in the races, although they paid the same competition fee as non-members. Members who only wished to watch the races paid a reduced gate fee of two dollars. In 1989, single membership dues were thirty dollars and family memberships dues were forty dollars per year. OMC had fifty-one charter members who did not pay dues. All fees were used to maintain the tracks and other race facilities.

OMC members have the privilege of using the property for dirt-bike riding on days when there are no races. The general public does not have access to the OMC property other than as spectators or participants on race days. Before 1989, OMC did not have any provision in its articles of incorporation for the allocation of the property in the event of dissolution. After questioning at the Board of Equalization hearing, OMC amended its articles to provide that the Club's assets would be distrib-

uted to the Idaho Department of Recreation upon dissolution.

In 1989, Ada County reassessed the taxable status of properties in the county and decided the land owned by OMC should be taxed. OMC appealed to the Board of Equalization and the Board of Tax Appeals, both of which affirmed the decision to tax the property. OMC then appealed to the district court which conducted a trial de novo. Both parties stipulated to the factual findings of the Board of Tax Appeals and moved for summary judgment. The district judge granted summary judgment in favor of Ada County and OMC appealed to this Court.

## II.

### OMC DOES NOT QUALIFY FOR A CHARITABLE EXEMPTION UNDER I.C. § 63–105C

Although OMC provides a form of community service by offering recreational opportunities, OMC members, not the general public, benefit most from OMC's services. Considering the provisions of I.C. § 63–105C and prior case law, we agree with the trial court that OMC does not qualify for tax exempt status as a charitable organization.

■ This case presents a mixed question of fact and law. The interpretation of I.C. § 63–105C and the requirements for a charitable exemption are questions of law for which this Court takes de novo review. *Boise Cent. Trades & Labor Council v. Board of Ada County*, 122 Idaho 67, 831 P.2d 535 (1992). The issue of fact is whether the activities of OMC meet the requirements for a charitable exemption. *Bogus Basin Recreational Ass'n, Inc. v. Boise County Bd. of Equalization*, 118 Idaho 686, 688, 799 P.2d 974, 976 (1990). Where both parties move for summary judgment on the same stipulated facts, the standard is whether the record is sufficient to justify the district court's findings. *Boise Cent. Trades*, 122 Idaho at 69–70, 831 P.2d at 537–38.

■ Idaho Code § 63–105C is a general provision which grants tax exempt status to "[p]roperty belonging to any frater-

nal, benevolent, or charitable corporation or society...." We have interpreted this provision broadly stating that charity is not limited to providing monetary aid to the needy. *Appeal of Sunny Ridge Manor, Inc.*, 106 Idaho 98, 100, 675 P.2d 813, 815 (1984). "The word 'charitable,' in a legal sense, includes every gift for general public use, whether it be for educational, religious, physical or social benefit." *Id.* (citations omitted). However, tax exemptions are never presumed and statutes granting such exemptions will be strictly construed against the taxpayer. *Bogus Basin*, 118 Idaho at 687, 799 P.2d at 975. Furthermore, a non-profit organization is not entitled to property tax exemption merely because it provides some services to the general public. *Id.*

■ A charitable organization must provide some type of general public benefit. *Coeur d'Alene Pub. Golf Club, Inc. v. Kootenai Bd. of Equalization*, 106 Idaho 104, 675 P.2d 819 (1984). We have explained that there are a number of factors to consider in determining charitable status, some of which bear on the issue of public benefit:

(1) the stated purposes of its undertaking, (2) whether its functions are charitable ..., (3) whether it is supported by donations, (4) whether the recipients of its services are required to pay for the assistance they receive, (5) whether there is general public benefit, (6) whether the income received produces a profit, (7) to whom the assets would go upon dissolution of the corporation, and (8) whether the "charity" provided is based on need.

*Sunny Ridge*, 106 Idaho at 100, 675 P.2d at 815. Charitable status is an individual matter to be decided on a case by case basis. *Id.* This is not an exclusive list of factors and some of the listed factors may not apply in every case. *Id.* As a starting point for our determination we will examine each of the factors set forth above.

A. *THE STATED PURPOSE OF ITS UNDERTAKING AND WHETHER ITS FUNCTIONS ARE CHARITABLE*

■ Under certain circumstances, the recreational services offered by OMC may be

considered charitable. Providing for recreation is a community service, which, if other factors are present, may be a charitable activity. *See Sunny Ridge*, 106 Idaho at 101, 675 P.2d at 816. OMC's stated purpose is to promote the recreational use of motorcycles. Functionally, OMC provides such recreational use by sponsoring motorcycle races and providing a place where some can ride for pleasure. While promoting the recreational use of motorcycles probably does not comport with traditional notions of "charitable activities," under the broader definitions we have previously adopted, it is possible to find some benefit to the community. Whether motorcycling is a recreational activity is not the only consideration, however, and we must determine whether any of the other charitable factors are present.

### B. *WHETHER IT IS SUPPORTED BY DONATIONS*

OMC does not receive substantial outside donations which work to the benefit of the general public. This Court considers outside donations to be an important charitable factor because it reduces the cost to the general public. *Sunny Ridge*, 106 Idaho at 101, 675 P.2d at 916; *Coeur d'Alene Pub. Golf Club*, 106 Idaho at 107, 675 P.2d at 822. The donations in the present case are from members of OMC in the form of donated time and equipment. In return for the donated time, members receive benefits from OMC in the form of reduced admission fees and the opportunity to use OMC property for dirt-bike riding on non-race days. Considering the facts before this Court, OMC has not shown that the general public receives a direct benefit from the donations of the club members.

### C. *WHETHER THE RECIPIENTS OF ITS SERVICES ARE REQUIRED TO PAY FOR THE ASSISTANCE THEY RECEIVE*

OMC charges a fee for its services. This factor is of great importance and should be weighed accordingly. *Sunny Ridge*, 106 Idaho at 102, 675 P.2d at 817. Fees which are remunerative in character indicate that the activity is not charitable, although a number of jurisdictions have held that cost-free assistance is not required. *Id.* It is important, though, that the charges be nominal, or at least not commensurate with the benefits provided. *Id.*

There is no dispute that OMC charges a fee to those watching and participating in motorcycle races. Most of OMC's operational costs, over $100,000 in 1989, were generated from fees charged to spectators and participants. The general public pays more than nominal fees including five dollars for admission and as much as twenty dollars per race to participate in the races. Where, as here, the fees charged are sufficient to cover much of the current operating expenses it is difficult to view this as charitable. For these reasons, the fees charged for services in this case indicate that OMC is not a charitable organization.

### D. *WHETHER THERE IS GENERAL PUBLIC BENEFIT*

OMC does not provide a general public benefit for the purposes of I.C. § 63–105C. The question presented by this factor is whether the organization fulfills a need which the government might otherwise be required to fill. *Sunny Ridge*, 106 Idaho at 102, 675 P.2d at 817. Even though only a limited number of people actually receive a benefit from the services provided, the organization may still be seen as charitable if the government would otherwise have to pay to provide the services to those few. *Id.* Where there is no service provided to those for whom the government must otherwise provide, the organization must show there is benefit to the public at large. *Id.*

Recreational motorcycling is not the type of need that the government is required to fulfill. Accordingly, OMC has a greater burden to show that it benefits the community at large rather than a select group of persons. *See Coeur d'Alene Pub. Golf Club*, 106 Idaho at 106, 675 P.2d at 821. While motorcycling does provide a recreational benefit, here the record indicates that OMC's services primarily benefit club members rather than the community at large. OMC's property is only open to the

public fifty to sixty days a year, and on those days the public must pay an admission fee. OMC members are able to use the property all year long, and members pay less than half of what the general public does in admission fees. It is also important that only one-half of the OMC property is used at all for any purpose. For these reasons, it would not appear that OMC provides a general public benefit as we have defined that concept. *See, e.g., Sunny Ridge,* 106 Idaho at 102, 675 P.2d at 617; *Coeur d'Alene Pub. Golf Club,* 106 Idaho at 106, 675 P.2d at 821.

### E. WHETHER THE INCOME RECEIVED PRODUCES A PROFIT

Although profit is some indicia that an organization is operating similar to a for-profit corporation, the facts here demonstrate that OMC retains only a marginal profit and has no employees. Under these circumstances, the fact that OMC retains a profit is not determinative of whether OMC is a charitable corporation.

### F. TO WHOM THE ASSETS WOULD GO UPON DISSOLUTION OF THE CORPORATION

Another indication of charitable status is whether an organization's assets are distributed to the public or to some other charitable cause upon dissolution. The articles of incorporation for the retirement home in *Sunny Ridge* provided that the assets would be distributed to other non-profit corporations for purposes similar to that of the retirement home. 106 Idaho at 103, 675 P.2d at 818. In *Coeur d'Alene,* the public golf club had provisions in its articles for the assets of the organization to be distributed to charity upon dissolution. 106 Idaho at 106, 675 P.2d at 821.

In contrast, at the time this property was reassessed in 1989, OMC did not have any provision in its articles pertaining to the distribution of assets upon dissolution. While that deficiency has admittedly now been corrected, it did not support OMC's assertion of charitable status at the time Ada County reassessed the property.

### G. WHETHER THE CHARITY PROVIDED IS BASED ON NEED

We have indicated that to maintain tax exempt status, an organization should provide charitable assistance in the form of reduced costs for those who need it. *Appeal of Evangelical Lutheran Good Samaritan Society v. Board of Equalization of Latah County,* 119 Idaho 126, 133, 804 P.2d 299, 306 (1990); *Sunny Ridge,* 106 Idaho at 103, 675 P.2d at 818. In this case, there is no evidence that OMC offers any reduced fees for needy persons to watch or participate in the motorcycle races. This is another factor indicating that OMC is not a charitable organization.

### H. OTHER CHARITABLE EXEMPT PROPERTY

Finally we consider other statements by this Court discussing the charitable exemption as it relates to recreational activity. In *Coeur d'Alene Public Golf Club* we held that a public golf course was entitled to a tax exemption as a charity. 106 Idaho at 104, 675 P.2d at 819. There are important differences, however, between the factual setting in *Coeur d'Alene* and the case at bar. First, the Court found that the general public benefitted from the reduced cost and broad availability of the golf course in question. *Id.* at 107, 675 P.2d at 822. The cost to the public to play golf covered only a part of the total cost in establishing and maintaining the course. The golf course was open to the general public most every day of the year and did not favor a small group over the community at large. *Id.* at 106, 675 P.2d at 821. In addition, the golf club also provided instructional golf at reduced rates for students. The articles of incorporation for the corporation provided that the property would be donated to charitable uses upon dissolution of the corporation. *Id.* Finally, the Court found the recreational value and benefit to the community of golf courses was reflected in the fact that many municipalities own and operate public golf courses. *Id.*

In contrast, OMC's facilities are only open to the public an average of fifty days

each year and, even then, the general public is only allowed to watch and participate in races for a fee. The property is never available to the public for the purpose of recreational riding, and only one-half of it is available to anyone for use because of the terrain. OMC has not shown that it offers recreational motorcycling to the public at a reduced rate and the fees charged appear commensurate with the costs of the services offered by OMC. There is no indication in the record that the property was acquired or is maintained to any significant degree by outside donations, although members do donate time and equipment for the races. Moreover, there is no evidence to indicate that any governmental entity owns or subsidizes recreational motorcycling. Finally, at the time of Ada County's reassessment in 1989, there was no provision for distribution of the property upon OMC's dissolution.

### III.

### CONCLUSION

Although OMC does offer a useful service by providing a safe forum for recreational motorcycle riding, "[t]he basis of tax exemptions is the accomplishment of public purpose and not the favoring of particular persons or corporations at the expense of taxpayers generally." *Sunny Ridge*, 106 Idaho at 103, 675 P.2d at 818, (*quoting Sunset Memorial Gardens v. Idaho State Tax Comm'n*, 80 Idaho 206, 219, 327 P.2d 766, 774 (1958)). Considering the factors set forth in *Sunny Ridge*, OMC does not qualify for a charitable exemption under I.C. § 63–105C and we therefore affirm the decision of the trial court. Costs to respondents.

McDEVITT, C.J., and REINHARDT, District Judge Pro Tem., concur.

JOHNSON, Justice, concurring, concurring in the result, and dissenting.

I concur in all of the Court's opinion, except part II(D) (Whether There Is General Public Benefit) and part II(H) (Other Charitable Exempt Property). I concur in the result of part II(H) and dissent from part II(D).

In my view, the result of part II(H) is supported by the rationale that OMC has not shown that it offers recreational motorcycling to the public at a reduced rate and that the fees charged appear commensurate with the costs of the services offered by OMC. I do not accept as a rationale the statement that the record does not indicate that OMC's property was acquired nor maintained to any significant degree by donations. In my view, the members' donations have contributed to the acquisition and maintenance of OMC's property.

I dissent from part II(D), because of its attempt to distinguish the public benefit of motorcycle riding from the public benefit of playing golf, as supported by *Coeur d'Alene Pub. Golf Club v. Kootenai Bd.*, 106 Idaho 104, 675 P.2d 819 (1984). The suggestion that a private golf course fulfills a need which the government might otherwise be required to fill, but that a private motorcycle track does not, smacks of elitism I believe has no place in our legal system.

BISTLINE, J. concurs.