913 P.2d 68

In the Matter of the Appeal of Housing Southwest, Inc., from the Idaho Board of Tax Appeals, Decision in Appeal No. 92–A–6240.

HOUSING SOUTHWEST, INC.,
Petitioner–Respondent on
Appeal,

v.

WASHINGTON COUNTY, Idaho,
Respondent–Appellant on
Appeal.

No. 21130.

Supreme Court of Idaho,
Boise, October 1995 Term.

March 5, 1996.

Burton & Kroll, Ira T. Burton, Weiser, for appellant.

Alan G. Lance, Meridian, for respondent.

SCHROEDER, Justice.

This is an appeal by Washington County from a district court decision which found that respondent Housing Southwest, Inc. is entitled to a charitable property tax exemption pursuant to section 63–105C of the Idaho Code for its six-unit housing complex. On cross-appeal Housing Southwest seeks an award of attorney fees pursuant to Idaho Appellate Rules 35(b)(5) and 41, and section 12–121 of the Idaho Code.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Housing Southwest, Inc. is the owner of a six-unit, low-income housing facility for senior citizens and disabled persons in Cambridge, Washington County, Idaho. In 1992 the property was appraised by the Washing-

ton County Assessor at a value of approximately $105,000.00.

Housing Southwest was formed as a non-profit corporation in February of 1978. Housing Southwest's primary stated purpose is "the promotion of the social welfare of the poor and underprivileged by providing low cost rental housing for senior citizens and families otherwise unable to obtain said housing on the open market." The articles of incorporation stipulate that any excess earnings over current expenses must be applied either to prepayment of the housing mortgages, reduction of rents, or for the provision of additional low income housing. The articles further provide that upon dissolution of the corporation, any surplus assets must be distributed by the district court to like non-profit corporations and that no distribution is to be made to any member of the organization. No directors or officers may receive any part of the earnings of the corporation. Southwest Housing is qualified as a charitable corporation under section 501(c)(3) of the Internal Revenue Code.

The facility in question was built in 1979 pursuant to Farm Home Administration (FHA) standards and regulations. It consists of one fourplex and a duplex with a small laundry and attached storage. The basic monthly rent for each unit is $270.00, although their market value is approximately $400.00 per month. Eligibility is limited to those who are 62 years of age or older and fall below a certain income level or are disabled. Qualified tenants must pay the lesser of 30 percent of their adjusted gross income, less certain medical expenses, or $270.00 per month. The difference between the market rate and the actual rent paid is covered by FHA subsidies. Housing Southwest receives no private donations. The only funds it receives are the tenant rent payments and federal subsidies. A tenant who has income but fails to pay rent may be evicted, but a tenant who has no income may not be evicted. No other low income housing is provided in the Cambridge area.

The actual rents paid by tenants in 1992 varied from $51.00 per month to the maximum rent of $400.00 per month. The latter was paid by a single tenant, whose income

exceeded the income level required by FHA for subsidized housing. In 1992 Housing Southwest collected $20,620.00 in revenue, with $19,100.00 in operating expenses. Of its 1992 revenue, $9,810.00 was collected from tenants as rent, with the balance paid by FHA in rent subsidies.

Housing Southwest applied to the Washington County Board of County Commissioners sitting as a Board of Equalization (Board of Equalization) for a charitable tax exemption for its housing complex pursuant to section 63–105C of the Idaho Code.[1] The Board of Equalization denied Housing Southwest's application for an exemption on the ground that the project is in competition with private business. Housing Southwest appealed the decision to the Idaho Board of Tax Appeals. The Board of Tax Appeals affirmed the county Board of Equalization's ruling. The appeal was denied on the basis that no charitable functions are performed by Housing Southwest, because "[t]his organization is not relieving any governmental obligation as government has already provided the construction loan and is providing the subsidies."

Housing Southwest appealed to the district court which reversed the decisions of the Board of Tax Appeals and the Board of Equalization. Applying the guidelines set forth in *In re Sunny Ridge Manor, Inc.*, 106 Idaho 98, 675 P.2d 813 (1984), the district court found that Housing Southwest's stated

purpose was unquestionably charitable; its functions are in fact charitable because housing is provided to low-income elderly and disabled persons at a fraction of what it would cost on the open market; federal rent subsidy revenue could be considered a "donation;" unlike the tenants in *Sunny Ridge*, Southwest Housing's tenants do not pay full market value for what they receive; a public benefit is provided because the providing of "safe and sanitary dwelling accommodations for persons of low income are public uses … and are governmental functions;" no profit is derived; Housing Southwest's assets can only be distributed to other charitable organizations; and the service provided is based on need.

Washington County appeals this decision, and Housing Southwest cross-appeals for attorney fees pursuant to I.A.R. 35(b)(5) and 41, and section 12–121 of the Idaho Code.

## II.

## STANDARD OF REVIEW

██ Interpretations of requirements for charitable exemption from property tax are questions of law over which this Court exercises free review. *Owyhee Motorcycle Club, Inc. v. Ada County*, 123 Idaho 962, 964, 855 P.2d 47, 49 (1993). Statutes granting tax exemptions must be strictly construed

1. **63–105C. Property exempt from taxation— Fraternal, benevolent, or charitable corporations or societies.**—The following property is exempt from taxation: Property belonging to any fraternal, benevolent, or charitable corporation or society, the World War veteran organization buildings and memorials of this state, used exclusively for the purposes for which such corporation or society is organized; provided, that if any building or property belonging to any such corporation or society is leased by such owner or if such corporation or society uses such property for business purposes from which a revenue is derived which, in the case of a charitable organization, is not directly related to the charitable purposes for which such charitable organization exists, then the same shall be assessed and taxed as any other property, and if any such property is leased in part or used in part by such corporation or society for such purposes the assessor shall determine the value of the entire building [and the value of the part used or leased for commercial purposes. If the value of the part used for commercial purposes is deter-

mined to be three per cent (3%) or less than the value of the entirety, the whole of said property shall remain exempt. If the value of the part used for commercial purposes is determined to be more than three per cent (3%) of the value of the entirety, the assessor shall] (and) assess such proportionate part of such building including the value of the real estate as is so leased or used for such purposes, and shall assess all merchandise kept for sale, and the trade fixtures used in connection with the sale of such merchandise [; provided, however, that the lease or use of any property by any such corporation or society for athletic or recreational facilities, residence halls or dormitories, meeting rooms or halls, auditoriums or club rooms within the purposes for which such corporation or society is organized, shall not be deemed a business or commercial purpose, even though fees or charges be imposed and revenue derived therefrom]. [I.C., § 63–105C, as added by 1961, ch. 42, § 4, p. 57; am. 1970, ch. 166, § 1, p. 491; am. 1970, ch. 236, § 1, p. 652.]

against the taxpayer and in favor of the state. *Id.* Exemptions are never presumed; nor can a statute granting a tax exemption be extended by judicial construction to create an exemption not specifically authorized. *Id.*

## III.

## FEDERAL SUBSIDIES ARE NOT DONATIONS FOR PURPOSES OF DETERMINING WHETHER HOUSING SOUTHWEST IS ENTITLED TO THE PROPERTY TAX EXEMPTION ALLOWED BY SECTION 63–105C OF THE IDAHO CODE

 The basis of tax exemptions is the accomplishment of a public purpose and not the favoring of particular persons or corporations at the expense of taxpayers generally. *Sunny Ridge Manor,* 106 Idaho at 103, 675 P.2d at 818. Determination of a corporation's charitable status must be made on a case-by-case basis, considering the particular circumstances of the individual corporation. The determination is not susceptible of the application of hard and fast rules. *Id.* at 100, 675 P.2d at 815.

There are several considerations which courts have looked to as determining an organization's charitable status:

(1) the stated purposes of its undertaking, (2) whether its functions are charitable, (3) *whether it is supported by donations,* (4) whether the recipients of its services are required to pay for the assistance they receive, (5) whether there is general public benefit, (6) whether the income received produces a profit, (7) to whom the assets would go upon dissolution of the corporation, and (8) whether the "charity" provided is based on need.

106 Idaho at 100, 675 P.2d at 815 (emphasis added). This is not an exclusive list of factors, and some of the factors may not apply in every case. *Id.*

In *Owyhee Motorcycle Club,* this Court stated that it considers outside donations to be an important charitable factor, because they reduce the cost to the general public of the service being provided. 123 Idaho at 965, 855 P.2d at 50. The question of whether subsidies are treated as donations has been considered in other states with varying results. *See,* for example, *Yakima First Baptist Homes, Inc. v. Gray,* 82 Wash.2d 295, 510 P.2d 243, 246 (1973) (Where rent subsidies are paid pursuant to contract they may not be considered "public donations" under Washington's charitable tax exemption statute requiring that exempt organizations be "supported in whole or in part by public donations".); *Supervisor of Assessments of Baltimore City v. Har Sinai W.,* 95 Md.App. 631, 622 A.2d 786, 792 (1993) (Federal rent subsidies were not "donations" under a four-factor test which included a requirement that an organization must be charitable in its *purpose* and its *means,* as opposed to a line of cases whose statutes only required that the *use* be exclusively charitable.); *G.D.L. Plaza v. Council Rock School Dist.,* 515 Pa. 54, 526 A.2d 1173, 1177 (1987) (Federal subsidies are not donations because the subsidies do not occur fortuitously, and property taxes were expressly covered by the federal subsidization, so neither the corporation nor the beneficiaries of the housing service would be adversely affected by subjecting the facility to property taxes.); *Clark v. Marian Park, Inc.,* 80 Ill.App.3d 1010, 36 Ill.Dec. 241, 244, 400 N.E.2d 661, 664 (1980) (Federal subsidies are not public charity); *Waterbury First Church Hous., Inc. v. Brown,* 170 Conn. 556, 367 A.2d 1386, 1389 (1976) (Federal subsidies do not constitute charitable means.); *Parker v. Saint Stephen's Urban Dev. Corp.,* 243 N.J.Super. 317, 579 A.2d 360 (App.Div.1990) (Federally subsidized housing corporation did not depend on charitable contributions but rather served as quasi-public conduit for federal funds.). For holdings to the contrary *see Franciscan Tertiary Province v. State Tax Comm'n,* 566 S.W.2d 213, 223 (Mo.1978) (the purpose for which a property is used is determinative, and all other factors, such as whether the institution is supported by donations, are relevant only to the extent they indicate the institution's purpose, and federal subsidies have the same effect as charitable contributions from the private sector.); *Rolla Apartments v. State Tax Comm'n,* 797 S.W.2d 781 (Mo.Ct.App.1990) (finding federal subsidization irrelevant to determination of charitable status, based on *Franciscan Tertiary* ); *Yorgason v. County Bd. of Equaliza-*

*tion,* 714 P.2d 653, 657, 660 (Utah 1986), (the use of the property is determinative, and it is irrelevant that the government, rather than a private benefactor, makes up the deficit).

■ Section 63–105C of the Idaho Code does not require that exempt institutions be supported or maintained by charity or donations. Rather, that element arises from case law. As this Court noted in *Owyhee Motorcycle Club,* the requirement of donations is an important factor, because charitable donations reduce the cost of the service provided, either to the public generally as direct beneficiaries of the service or to taxpayers who would otherwise bear the burden. 123 Idaho at 965, 855 P.2d at 50. The question of whether a corporation provides a general public benefit is closely connected to the question of whether a corporation is supported by donations.

■ For a corporation's uses to be considered charitable it is essential that they provide some sort of general public benefit. *Coeur d'Alene Pub. Golf Club v. Kootenai Bd. of Equalization,* 106 Idaho 104, 105, 675 P.2d 819, 820 (1984). If the general public does not receive a direct benefit from a corporation's donations, then the question presented by the "general public benefit" factor is whether the corporation fulfills a need which the government might otherwise be required to fill. *See Owyhee Motorcycle Club,* 123 Idaho at 965, 855 P.2d at 50; *Sunny Ridge,* 106 Idaho at 100, 675 P.2d at 815. While the requirement that a corporation lessen the burden of government is but one factor to be considered in determining tax exempt status, it is nevertheless an important one. *Coeur d'Alene Pub. Golf Club,* 106 Idaho at 106, 675 P.2d at 821.

In *Sunny Ridge,* this Court reversed a district court decision granting a charitable tax exemption to Sunny Ridge Manor Inc., a nonprofit corporation which operated a retirement home. The Court stated that, "[a] nonprofit corporation may benefit only a limited group of people and still be considered 'charitable' if that group of people possess a need which government might be required to fill." 106 Idaho at 102, 675 P.2d at 817. Because Sunny Ridge did not provide a general benefit to the community as a whole and

only served a limited group of people who did not require government assistance, it did not satisfy the "general public benefit" factor for determining its charitable status under section 63–105C of the Idaho Code. *Id.*

Housing Southwest argues that, because it provides housing to low-income senior citizens and disabled persons based on need, it is meeting a need that might otherwise have to be met by government. This argument is circular in that the need Housing Southwest meets is in fact being met by government through tax-supported FHA subsidies.

The facts here are analogous to those presented in *Parker v. Saint Stephen's Urban Dev. Corp.* In that case, a New Jersey appellate court held that:

> [B]y the very nature of its operation, defendant contravenes one of the footings of charitable status—undertaking acts by which the government is relieved *pro tanto* from a burden it would otherwise have to perform (citation omitted). It is the government which pays defendant's mortgage interest, supplies mortgage insurance, and subsidizes the tenants sufficient to meet its operating expenses, including the remaining mortgage payments. Defendant was not created to lessen the burden on government but to obtain as much funding from the government as possible and to operate the project exclusively with that funding. As such, it is no more entitled to charitable immunity than the government itself.

579 A.2d at 365.

On the facts here, Housing Southwest does not perform a function which might otherwise be an obligation of government, because it provides housing supported by federal tax dollars without private donations.

Statutes granting tax exemptions must be strictly construed against the taxpayer and in favor of the State. Exemptions are never presumed, nor can a statute granting tax exemption be extended by judicial construction to create an exemption not specifically authorized. *Owyhee Motorcycle Club,* 123 Idaho at 964, 855 P.2d at 49. There is no legislative direction that indicates federal subsidies qualify as donations. In fact the

burden is merely shifted from one group of taxpayers to another, and government is not relieved of an obligation it would otherwise have. Housing Southwest does not qualify as a charitable organization pursuant to section 63–105C of the Idaho Code.

## V.

## CONCLUSION

The decision of the district court is reversed. Costs are awarded the appellant. No attorney fees are awarded.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.